Daniel A. **VAUGHN** and Cheryl T. Vaughn, husband and wife

v.

**ZONING HEARING BOARD OF the TOWNSHIP OF SHALER, Township of Shaler, Anthony and Roseanna Febbraro**

**Appeal of: Township of Shaler.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2008.

Decided April 2, 2008.

Rehearing Denied En Banc June 2, 2008.

---

Harlan S. Stone, Pittsburgh, for appellant.

Peter N. Georgiades, Pittsburgh, for appellees, Daniel A. and Cheryl T. Vaughn.

Thomas J. Dempsey, Pittsburgh, for appellee, Zoning Hearing Board of the Township of Shaler.

Brad N. Sommer, Pittsburgh, for appellee, Roseanna Febbraro.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Township of Shaler (Township) appeals from the August 15, 2007, order of the Court of Common Pleas of Allegheny County (trial court), which reversed the May 25, 2006, decision of the Zoning Hearing Board of the Township of Shaler (ZHB) that Anthony and Roseanna Febbraro (the Febbraros) are entitled to a variance by estoppel with regard to a re-

taining wall constructed on their property. We reverse.

The Febbraros own a single-family residence located in the Township's R–1 zoning district. The Febbraros wanted to construct a 160–foot long, precast concrete, "jumbo block" wall on their property to level their backyard and prevent the possibility of a landslide on neighboring property. Prior to beginning construction, the Febbraros contacted the Township's Zoning Officer, Robert C. Vita (Vita), several times to request information on what, if anything, they needed to obtain from the Township before constructing the wall. Vita and the Township Engineer inspected the Febbraros' property and the plans for the wall, and, on several occasions thereafter, Vita informed the Febbraros that because the proposed wall was a retaining wall, it was allowed to be constructed up to the edge of their property without any permits.[1] At Vita's request, Mr. Febbraro memorialized Vita's opinion that no permits were required in an email and letter, and Mr. Febbraro sent a copy of each to Vita on November 3, 2003. The Febbraros began construction on their retaining wall on November 18, 2003, and the wall was completed, for the most part, by November 25, 2003. The distance of the wall from the edge of the Febbraros' property ranges from two to four feet, and the height of the wall ranges from two feet to ten feet. (ZHB's Findings of Fact, Nos. 1, 5–6, 9–13, 20–28, 30–36.)

Soon after construction began, the Febbraros' neighbors, Daniel A. Vaughn and Cheryl T. Vaughn (the Vaughns), whose property abuts the Febbraros' Property and is lower in elevation than the Febbraros' property, complained to Township officials about the wall. As a result, the Township Manager, Timothy Rogers (Rogers), sent a stop work order, dated December 1, 2003, to the Febbraros. Although, by that time, construction on the wall was complete except for a cap and fence, which the Febbraros intended to place on top of the wall, the Febbraros agreed to stop all work on the wall until they spoke with Vita. Thereafter, Vita informed Rogers that no permit was required for the wall.[2] (ZHB's Findings of Fact, Nos. 14–15, 50–55.)

In the spring of 2004, Mr. Febbraro contacted Rogers and Vita about his intention to put a cap and fence on top of the wall, and, again, asked if he needed a permit for this part of the construction. As before, Vita advised Mr. Febbraro that no permit was needed. However, Rogers indicated that, although he and Vita had no problem with the cap and fence without a permit, the Febbraros would be doing this work at their own risk. The Febbraros paid $16,287 for the construction of the wall, $10,700 for the wall itself and $5,587 for the cap and fence on top. The cost to remove the wall would be $20,000. (ZHB's Findings of Fact, Nos. 42–48, 86–89.)

On January 2, 2004, the Vaughns filed an appeal to the ZHB from Vita's determi-

---

1. Vita also is the Township's Building Inspector. Vita testified that he first visited the Febbraros' property about the proposed construction of the wall on or about October 22, 2003, and that Mr. Febbraro showed him exactly what he wanted to do with the wall. Vita visited the Febbraros' property at least three or four times, and, each time the question of the necessity of permits came up, Vita informed the Febbraros that no permit was required. Vita stated that the Febbraros appeared to be willing to do whatever landscap-

ing or other aesthetic work that would improve the appearance of the wall, including planting ivy or shrubbery on and around the wall. (ZHB's Findings of Fact, Nos. 17, 39–40, 81.)

2. There was no document from the Township ending the stop work order, and neither Rogers nor Vita recalled rescinding or retracting the stop work order. (ZHB's Findings of Fact, Nos. 53, 55, 60.)

nation that the Febbraros did not need a permit to construct the wall. Concluding that it lacked jurisdiction, the ZHB dismissed the January 2004 appeal. However, the trial court subsequently reversed and remanded the matter to the ZHB, holding that the ZHB had jurisdiction over the matter pursuant to section 909.1(a)(3) of the Pennsylvania Municipalities Planning Code (MPC),[3] (stating that a zoning hearing board has jurisdiction to hear appeals from the determinations of a zoning officer). The ZHB held a *de novo* hearing on September 16, 2004, at which the parties introduced new evidence and stipulated that the evidence from the January 2004 appeal would be incorporated into the record.

At the September 2004 hearing, the Vaughns argued that the wall was a structure within the meaning of the MPC and the Township's Ordinance (Ordinance), and, therefore, Vita erred in allowing the Febbraros to construct the wall without a building permit.[4] The Vaughns also asserted that the wall was an accessory use under the Ordinance and, as such, was subject to and in violation of the Ordinance's side yard setback requirements.[5] The Febbraros countered that Vita properly determined that the wall is not a structure and did not require a building permit. Alternatively, the Febbraros claimed that they were entitled to a variance by estoppel. The Vaughns maintained that the ZHB should not consider the Febbraros' alternative argument because the issue in the case was limited to whether the wall was a structure and because the Febrraros had not yet applied for a variance.

By decision dated October 26, 2004, the ZHB agreed with the Febbraros' initial argument and held that no permit was required because the wall was not a structure; thus, the ZHB found it unnecessary to decide whether the Febbraros were entitled to a variance by estoppel. The Vaughns appealed to the trial court, which did not take additional evidence.

After hearing argument, the trial court held that, contrary to the ZHB's determination, the Febbraros' retaining wall was a structure as defined in section 107 of the MPC, 53 P.S. § 10107, and section 225–6 of the Ordinance.[6] Nevertheless, the trial court concluded that the Febbraros could keep their retaining wall under the theory of variance by estoppel. The Vaughns filed a motion for reconsideration, and, upon reconsideration, the trial court vacated that portion of its decision granting a variance by estoppel and informed the parties that it would hold an evidentiary hearing on the variance issue. However, after the Vaughns questioned the trial court's jurisdiction to go beyond the scope of the ZHB's October 26, 2004, determination, which did not address the variance issue, the trial court withdrew that portion of its

3. Act of July 31, 1968, P.L. 805, *as amended,* added by section 87 of the act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(3).

4. Section 225–90(A) of the Ordinance provides that no buildings or structures shall be erected without a building permit. (R.R. at 80.)

5. Section 225–15 of the Ordinance lists the accessory uses allowed in an R–1 zoning district and includes accessory structures. (R.R. at 33.) Section 225–26(E)(2) of the Ordinance requires a ten-foot setback for accessory structures in the R–1 zoning district, and section 225–26(G)(2) limits the maximum height of accessory structures to fifteen feet. (R.R. at 44.)

6. Both the MPC and the Ordinance define "structure" as "any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land." 53 P.S. § 10107; section 225–6 of the Ordinance.

opinion and, concluding that it lacked subject matter jurisdiction, denied the Febbraros' request for a variance by estoppel. This decision was not appealed.

On February 27, 2006, the Febbraros filed with the ZHB an application requesting a variance from the Ordinance's setback and permit requirements so that they could keep their completed retaining wall at its present location and height.[7] A hearing was held before the ZHB on April 13, 2006, with the parties again introducing new evidence and incorporating the records from the prior proceedings. At the April 13, 2006, hearing, the Febbraros asserted that they were entitled to keep the wall at its present location and height based either on the theory of variance by estoppel or the doctrine of vested rights because they innocently relied on Vita's repeated representations that they could build the proposed wall up to the edge of their property without applying for any permits.

In opposition to the Febbraros' variance request, the Vaughns presented the testimony of Mark Ackerman, a certified real estate appraiser and real estate broker. Ackerman testified that the Febbraros' retaining wall has increased the value of the Febbraros' property but has diminished the value of the Vaughns' property.[8] (R.R. at 228–29, 242–46.) However, Ackerman acknowledged that he did not actually appraise the Vaughns' property, stating that whatever that value was, it was reduced by the amount necessary to landscape along the wall. In addition, Ackerman agreed that there is no evidence that the Township's "non-enforcement" of the Ordinance with respect to the Febbraros' retaining wall has diminished the overall property values in the Township. (R.R. at 250–51, 265–67.)

Based on the evidence presented, the ZHB found that: (1) there is no evidence indicating there was a depreciation of the value of properties generally in the Township due to the construction of the wall; (2) the wall, as constructed, does not constitute a danger to public health, safety or morals; (3) prior to construction of the wall, the Febbraros diligently inquired of the appropriate Township officials as to whether or not they were required to obtain a permit for the construction of the wall; (4) the Febbraros acted in good faith and with clean hands throughout the process; and (5) the Febbraros complied with the requirements related to the construction of the wall that were indicated to them

---

7. The variance application also included an appeal from Vita's February 1, 2006, denial of the Febbraros' request for a permit for the retaining wall. (R.R. at 179.) However, neither the parties nor the ZHB nor the trial court treated this application as an appeal from the permit denial.

We note that, to the extent the Febbraros were seeking a variance from the Ordinance's setback regulations, they sought a dimensional variance and not a use variance. When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. *Hertzberg v. Zoning Board of Adjustment*, 554 Pa. 249, 721 A.2d 43 (1998). Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation. *Id.*

8. Ackerman stated that the Vaughns' property value is diminished due to: (1) the Township's failure to enforce its Ordinance and/or building code, which hinders the Vaughns', or any potential purchaser's, expectation that they have control over their property; (2) the material the Febbraros used to build the wall, which he characterized as "commercial"; and (3) the cost of planting and maintaining landscaping on the Vaughns' property to lessen the aesthetic impact of the retaining wall. (R.R. at 243–46, 252–55.)

by the appropriate Township officials. Because the Febbraros had expended a substantial amount of money in reliance on the affirmative representations of Vita, the ZHB concluded that, unless the Febbraros were granted a variance by estoppel, they would experience unnecessary hardship and would incur a substantial monetary expenditure to remove the wall.[9] Accordingly, the ZHB issued an order allowing the Febbraros to keep the retaining wall at its present location and height under the doctrine of variance by estoppel. (ZHB's Findings of Fact, Nos. 94–99; ZHB's Conclusions of Law, Nos. 1, 4–5, 9–10, 12.)

The Vaughns then appealed to the trial court, arguing, *inter alia,* that the ZHB, as a quasi-judicial agency created by statute, lacks jurisdiction to grant a variance by estoppel because such relief is equitable in nature and only can be granted by a court. The trial court, without taking additional evidence, agreed with the Vaughns and held that the ZHB does not have the authority to fashion equitable remedies. The trial court also determined that the Febbraros failed to establish the elements for a variance pursuant to section 910.2(a) of the MPC, 53 P.S. § 10910.2(a). Therefore, the trial court reversed the decision of the ZHB.

▇▇▇▇ Township, which intervened before the trial court, now appeals to this court.[10] On appeal, we are presented with two issues: (1) whether the ZHB had jurisdiction to grant the equitable relief requested by the Febbraros; and (2) if so, whether the ZHB's grant of such relief to the Febbraros was proper.

▇▇▇▇ Township argues that the trial court erred in holding that the ZHB lacked jurisdiction to grant the equitable relief requested by the Febbraros. We agree. In fact, the theories of variance by estoppel, vested rights and equitable estoppel all are well established and have been relied upon by zoning hearing boards and courts alike to permit a landowner to continue to use his property in violation of a zoning ordinance, where not to do so would create an unnecessary hardship by virtue of the landowner's detrimental reliance on municipal inaction, active acquiescence or misrepresentation.[11] Accordingly, we con-

9. The ZHB also concluded that: (1) the vested rights doctrine does not apply in this case because no permit was ever issued, which is a *sine qua non* in such cases; (2) there is nothing in the Ordinance or Township building code that prohibits the use of jumbo block for the construction of retaining walls; (3) the stop work order was not relevant; (4) the Febbraros' request for a variance was not barred by the doctrine of *res judicata;* and (5) the Febbraros' application was not untimely. (ZHB's op. at 22; ZHB's Conclusions of Law, Nos. 7–8, 11.)

10. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the ZHB committed an error of law or an abuse of discretion. *Elizabethtown/Mt. Joy Associates L.P. v. Mount Joy Township Zoning Hearing Board,* 934 A.2d 759 (Pa.Cmwlth.2007). This court may conclude that the ZHB abused its discre-

tion only if its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

11. Pennsylvania courts have held for decades that equitable relief is available in zoning cases to rectify inequities created by a landowner's good faith reliance on government action which results in the expenditure of substantial unrecoverable funds by the landowner and to preclude municipalities from enforcing their land use regulation or from denying relief from the terms of that regulation. *See e.g., Sheedy v. Zoning Board of Adjustment,* 409 Pa. 655, 659, 187 A.2d 907, 909 (1963) (holding that a zoning board of adjustment improperly denied a variance because enormous expenditures were necessary to restore the property to compliance, stating "it would be most inequitable and unjust to re-

clude that the ZHB had jurisdiction to grant equitable relief in this matter.

■ Having determined that the ZHB has the authority to grant equitable remedies, we now consider whether the ZHB properly allowed the Febbraros to keep their retaining wall under the theory of variance by estoppel. In its brief support-

fuse to grant a variance in this exceptional case"); *Cicchiello v. Zoning Hearing Board of Bloomsburg*, 151 Pa.Cmwlth. 506, 617 A.2d 835 (1992), *appeal denied*, 537 Pa. 625, 641 A.2d 589 (1994) (holding that equitable estoppel can properly be utilized against government agencies, such as a zoning hearing board, in zoning cases); *Kolesar v. Zoning Hearing Board of the Borough of Bell Acres*, 117 Pa.Cmwlth. 299, 543 A.2d 246 (1988), *appeal denied*, 520 Pa. 620, 554 A.2d 512 (1989) (holding that a landowner was entitled to a variance by estoppel to continue operating his business where he relied on permits issued by the municipality, received informal municipal consent to operate his business, expended a substantial amount of money in reliance on the municipality's conduct and where the use was not contrary to public health, safety, morals and the general welfare of the community); *Knake v. Zoning Hearing Board of Dormont.*, 74 Pa.Cmwlth. 265, 459 A.2d 1331 (1983) (applying the principals of variance by estoppel and vested rights to affirm the grant of a variance due to the longstanding inaction by the borough in regard to a known violation of the occupancy provisions of the zoning ordinance and holding that the borough was estopped from denying the permit). *See also* Robert S. Ryan, *Pennsylvania Zoning Law and Practice* (Ryan), §§ 8.1.2, 8.3.1–8.3.7 (1981).

Accordingly, we reject each of the Vaughns' arguments that zoning hearing boards lack jurisdiction to grant equitable relief. First, the Vaughns rely on our supreme court's decision in *In re Leopardi*, 516 Pa. 115, 532 A.2d 311 (1987), for the proposition that a zoning hearing board lacks authority to impose or enforce any remedy not expressly set forth in the MPC, and they assert that because the MPC does not expressly set forth these equitable remedies, the zoning hearing board has no authority to grant such relief. The court in *Leopardi* concluded that, under the MPC, the zoning hearing board has jurisdiction only

ing Township's appeal, the ZHB contends that the record clearly supports the grant of a variance by estoppel to the Febbraros, and we agree.

In *In re Kreider*, 808 A.2d 340, 343 (Pa.Cmwlth.2002) (citations omitted) (footnote omitted), we stated:

A variance by estoppel is one of three labels assigned in Pennsylvania land

to *hear and render decisions* in zoning matters and has no power to issue *enforcement* or remedial orders. However, here, the ZHB did not attempt to *enforce* the provisions of the Ordinance; rather, it *rendered a decision* on the Febbraros' variance application, which clearly is within the ZHB's jurisdiction.

Next, the Vaughns assert that the MPC limits a zoning hearing board's grant of variances to instances where all of the criteria set forth in section 910.2 of the MPC are satisfied, and a variance by estoppel does not satisfy this criteria. However, the prefatory language to the criteria set forth in section 910.2 provides that a zoning hearing board may grant a variance so long as the zoning hearing board makes all of the findings pertaining to the five requirements *"where relevant* in a given case." 53 P.S. § 10910.2 (emphasis added). The implication of this language is that, if a particular factor is *not relevant* in a particular case, the zoning hearing board need not make factual findings on that factor. *See Sombers v. Stroud Township Zoning Hearing Board*, 913 A.2d 306 (Pa. Cmwlth.2006), *appeal denied*, 594 Pa. 701, 934 A.2d 1280 (2007); *see also* Ryan, section 6.3.1. Because there are other relevant factors to consider when determining whether a landowner is entitled to equitable relief, section 910.2 of the MPC does not preclude the ZHB from granting relief to the Febbraros here. *See Sheedy; In re Kreider*, 808 A.2d 340 (Pa.Cmwlth.2002); *Bernie Enterprises v. Hilltown Township Zoning Hearing Board*, 657 A.2d 1364 (Pa.Cmwlth.1995), *appeal denied*, 542 Pa. 650, 666 A.2d 1058 (1995).

Finally, the Vaughns contend that the Febbraros' request for a variance was not ripe because the Township has not attempted to enforce the Ordinance. We note, however, that section 909.1(a)(5) of the MPC and section 225–100 of the Ordinance clearly confer jurisdiction on the ZHB to hear and render final adjudications on *applications* for variances.

use/zoning law to the equitable remedy precluding municipal enforcement of a land use regulation. Our courts have generally labeled the theory under which a municipality is estopped: (1) a "vested right" where the municipality has taken some affirmative action such as the issuance of a permit; [(2)] a "variance by estoppel" where there has been municipal inaction amounting to active acquiescence in an illegal use; or, [(3)] "equitable estoppel" where the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon that misrepresentation. Estoppel under these theories is an unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief. Except for the characterization of the municipal act that induces reliance, all three theories share common elements of good faith action on the part of the landowner: 1) that he relies to his detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the values of the expenditures would be lost.

With respect to the labels given to these remedies, we explained in *Kreider* that:

[t]o a large extent the different labels impose an analytical rigidity that is not helpful. Municipal action that may underpin estoppel often embodies more than one category; for example, active acquiescence manifested by the issuance of a permit; [or] issuance of a permit coupled with reliance on the zoning officer's interpretation of the ordinance.

*Id.* at 343, n. 5. (Citations omitted).

Here, the Febbraros established that: (1) they relied on Vita's repeated representations that they could build their retaining wall up to the edge of their property line without obtaining any permits; (2) based on that reliance, they made substantial expenditures by building the retaining wall; (3) they innocently believed, pursuant to Vita's representations concerning the Ordinance, that their retaining wall was a permitted use and that they could build it at its present location and height; and (4) the enforcement of the Ordinance would require them to remove the wall and expend an additional $20,000. Thus, the Febbraros clearly meet the criteria for equitable relief established under Pennsylvania law,[12] and the ZHB properly allowed the Febbraros to keep their retaining wall.[13]

Accordingly, we reverse.

12. We would conclude that the relief would be more appropriately labeled as equitable estoppel because the Febbraros relied on Vita's misrepresentation of the terms of the Ordinance, rather than on municipal inaction amounting to active acquiescence in an illegal use. However, because the three equitable theories often are used interchangeably and share common elements, the fact that we would label the relief differently than the ZHB is of no moment. *Kreider*.

13. In reaching this decision, we reject the Vaughns' assertions that the Febbraros' February 2006 variance application was barred by *res judicata*. For *res judicata* to apply, a litigant must establish the identity of four elements in the matter for which relief is sought: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the parties' capacity. *Harrington v. Zoning Hearing Board of East Vincent Township*, 117 Pa.Cmwlth. 197, 543 A.2d 226 (1988). Here, the issue before the ZHB in the September 2004 appeal was whether the wall was a structure and whether the Ordinance applied to the Febbraros' wall, (S.R.R. at 169), whereas the issue in the April 2006 proceedings was whether the Febbraros were entitled to a variance based on equitable principles. Moreover, the ZHB never adjudicated the merits of the Febbraros' initial variance

## ORDER

AND NOW, this 2nd day of April, 2008, the order of the Court of Common Pleas of Allegheny County, dated August 15, 2007, is hereby reversed.

by estoppel request because the ZHB concluded that the wall was not a structure subject to the Ordinance's regulations. The trial court, which initially granted the Febbraros a variance by estoppel, then withdrew that holding and, upon reconsideration, denied the variance based on a lack of subject matter jurisdiction. Accordingly, *res judicata* does not bar the Febbraros' variance application.

We likewise reject the Vaughns' argument that the Febbraros did not demonstrate good faith because the Febbraros proceeded at their own risk and continued to build their wall despite knowing of the Vaughns' challenge. We have held that when one begins construction pursuant to a zoning decision, such as the grant of a permit or a variance, during the pendency of the appeal period for that decision, that person ordinarily proceeds at their own risk. *Butch v. East Lackawannock Township Zoning Appeal Board*, 75 Pa. Cmwlth. 33, 460 A.2d 923 (1983). This rule has been applied to defeat claims of "hardship" resulting from the expenditure of funds during the appeal period. *Id.* However, be-

cause the Febbraros' claims of hardship are based on the expenditure of substantial, unrecoverable funds *in reliance* on the affirmative and erroneous *representations of Vita*, we conclude that this rule is not applicable.

Finally, we reject the Vaughns argument that the ZHB erred by failing to consider evidence that the wall diminishes the value of their property. In fact, the record reveals that the ZHB allowed Ackerman to testify as to the impact the wall had on the Vaughns' property value. (R.R. at 226a–71a.) Faced with the evidence concerning: (1) the hardship that would be inflicted on the Febbraros if it denied them relief; (2) the impact the retaining wall had on the Vaughns' property; and (3) the impact the retaining wall would have on the community as a whole, the ZHB gave more weight to the evidence of the Febbraros' hardship and the lack of danger to the public health, safety or morals than to the negative impact on the Vaughns. Questions of evidentiary weight are solely within the province of the ZHB as fact-finder. *Elizabethtown/Mt. Joy Associates.*