# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Forks Township, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 753 C.D. 2023 |
| | : | Submitted: May 7, 2024 |
| Forks Township Zoning Hearing | : | |
| Board | : | |

BEFORE:   **HONORABLE RENÉE COHN JUBELIRER,** President Judge
**HONORABLE CHRISTINE FIZZANO CANNON,** Judge
**HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**            **FILED:  June 7, 2024**

Forks Township (Township) appeals from an Order of the Court of Common Pleas of Northampton County (common pleas), which affirmed a decision by the Forks Township Zoning Hearing Board (Board) granting zoning relief to Lee Woo and Wen Hsin Hsiung (Intervenors).  On appeal, Township argues the Board erred by applying equitable estoppel principles because there was no inducement by the Township.  Upon review, we affirm.

Intervenors own property located at 1508 Cottage Street, Forks Township, Northampton County (Property), in the Country Residential (CR) zoning district. (Board Decision, Finding of Fact (FOF) ¶ 1; Conclusion of Law (COL) ¶ 2.) Intervenors reside on an adjoining property.  (FOF ¶ 1.)  In the CR zoning district, the minimum lot size is required to be at least 15,000 square feet.  (COL ¶ 3 (citing Section 200-15.C of the Forks Township Zoning Ordinance of 2013 (Ordinance)).) The Property is 12,000 square feet and is a preexisting, nonconforming lot.  (*Id.* ¶¶ 4-

5.) The Ordinance provides for an exception, including when the lot is not less than 80% of the minimum lot size for the relevant zoning district. (*Id.* ¶ 6 (citing Section 200-35.C.2 of the Ordinance).) However, the Ordinance further provides "[t]his exception shall not apply to any 2 or more contiguous lots in a single ownership as of or subsequent to the effective date of the provisions of this Chapter that made the lot non[]conforming, where a merger or re-subdivision could create one or more lots that would be less non[]conforming with this Chapter." (*Id.* ¶ 7 (quoting Section 200-35.C.3 of the Ordinance).)

When Intervenors submitted their application to build a single-family home on the Property, the new zoning officer denied the request, stating that the minimum lot size was not met and neither was the exception to this requirement because Intervenors owned two contiguous lots.[1] (*Id.* ¶ 11.) Intervenors appealed to the Board. (*Id.* ¶ 12.) Hearings were held January 10 and March 14, 2022,[2] at which Intervenor Woo, Barry Fehnel, Intervenors' general contractor, Township's current zoning officer, and some residents testified. Based upon the testimony and documentary evidence presented, the Board found as follows.

The prior owners of the Property asked Township's previous zoning officer whether the Property was buildable. (FOF ¶ 3.) In a letter dated February 11, 2019, the prior zoning officer responded that "[b]ased on the information provided to [him]

---

[1] Before applying for a permit for the Property, Intervenors sought and obtained a permit to construct a single-family dwelling on another lot that was simultaneously purchased, located at 1510 Cottage Street. (1/10/22 Transcript (Tr.) at 28-29; Ex. A-3, Reproduced Record (R.R.) at 212a.) This lot was also 12,000 square feet. (1/10/22 Tr. at 28-29; Ex. A-3, R.R. at 212a.) Intervenors received a residential use and occupancy permit that did not contain any conditions or restrictions, despite it adjoining the Property. (*Id.* at 27, 29-31; Ex. A-4, R.R. at 213a.)

[2] Transcripts of the hearings begin on page 31a of the Reproduced Record.

and with [certain] stipulations [detailed in the letter, he] determine[d] this to be a buildable lot." (*Id.* ¶ 5 (quoting Ex. A-1).)[3]

Approximately one year later, Mr. Fehnel emailed the prior zoning officer. (*Id.* ¶ 6; Ex. A-2, Reproduced Record (R.R.) at 211a.) In the email, Mr. Fehnel indicated he built Intervenors' home on the adjoining property, Intervenors were interested in purchasing the adjoining lots, which included the Property, and Intervenors wanted to ensure they could obtain a building permit to build a house on each lot before proceeding with the purchase. (FOF ¶ 6; Ex. A-2.)[4] According to Mr. Fehnel, the prior zoning officer told Mr. Fehnel in a telephone call that Intervenors would be able to build on the lots, including the Property. (FOF ¶ 7; 1/10/22 Transcript (Tr.) at 23, 25.) This testimony was objected to as hearsay, but the Board allowed it stating, "no testimony was presented to refute or contradict the evidence that [the] prior [z]oning [o]fficer . . . had indicated that this was a buildable lot." (FOF ¶ 7.) Mr. Fehnel also spoke with the prior owners of the Property, who provided him a copy of the letter they obtained from the prior zoning officer, which Mr. Fehnel then provided to Intervenors. (*Id.* at 17, 87-88.)

Intervenor Woo testified that Intervenors purchased the lots, including the Property, based upon the prior zoning officer's representations and would not have done so had the Property not been buildable. (FOF ¶¶ 8-9.) The Board credited this testimony. (*Id.* ¶ 9.) Intervenor Woo further testified that in addition to the $32,500 cost for purchasing the Property, Intervenors also incurred other costs, including

---

[3] Exhibit A-1 is in the Reproduced Record at page 210a. The "stipulations" included that if an existing swimming pool and pool house remained, any new dwelling meet all required setbacks, and that construction not exceed 25% impervious surface ratio. (Ex. A-1.) According to Intervenor Woo's testimony, the pool was filled and the structure removed prior to Intervenors' purchase of the Property. (1/10/22 Tr. at 90.)

[4] Exhibit A-2 is in the Reproduced Record at page 211a.

$9,500 for clearing the Property, $3,500 for engineering, and $3,500 for building supplies. (*Id.* ¶ 10.)

Based upon its findings, the Board concluded, in relevant part, that the exception to the minimum lot size requirement did not apply because of Intervenors' ownership of contiguous lots. (COL ¶ 8.) The Board further concluded that, but for the minimum lot size requirement, Intervenors would be permitted to construct the single-family, detached home on the Property. (*Id.* ¶ 10.) However, the Board determined Intervenors were entitled to relief based on the doctrine of equitable estoppel. (*Id.* ¶ 16.) Specifically, the Board concluded the representations by the prior zoning officer induced Intervenors to act and Intervenors justifiably relied upon that inducement. (*Id.*) In so holding, the Board cited the 2019 letter from the prior zoning officer to the prior owners that the Property was "a buildable lot." (*Id.* ¶ 17.) The Board reasoned, "This letter in and of itself, coupled with the testimony by and on behalf of [Intervenors] that they relied upon this letter in purchasing the [Property], clearly established inducement." (*Id.*) The Board continued:

> Although the additional communications with the prior [z]oning [o]fficer were objected to on a hearsay basis, the . . . Board has not relied upon that evidence in making this [] determination. However, it should be noted that [] Township did not present any evidence that the prior [z]oning [o]fficer did not continue to indicate that this was a buildable lot.

(*Id.*)

Moreover, the Board found Intervenors relied upon the prior zoning officer's representations to their economic detriment and "[i]t would cause unnecessary hardship to [Intervenors] to deprive them of the right and opportunity to construct a single-family residential structure on the [P]roperty, without compliance with the current minimum area requirement." (*Id.* ¶ 18.) Accordingly, the Board, by a 2-1

4

vote, granted the appeal and approved Intervenors' application to construct a single-family, detached residence on the Property. (Decision.)

Township appealed to common pleas, which, without taking additional evidence, affirmed. This appeal followed.[5] Township argues the Board erred in granting Intervenors zoning relief on the basis of equitable estoppel as there was no inducement. It argues the former zoning officer's letter to the prior owners of the Property years earlier could not have induced Intervenors. Rather, Township maintains the letter "makes no representation to anyone other than Mr. and Mrs. Laros. . . . It does not contain any promise or covenant[.]" (Township's Brief (Br.) at 14.) Further, Township asserts there is no allegation that the letter negligently or falsely represented anything. Because Intervenors did not seek any information from Township upon which they could have relied, Township argues it was error to invoke equitable estoppel principles under these circumstances. Township asks the Court to reverse common pleas' Order.

The Board[6] and Intervenors respond that there was substantial evidence to support the Board's finding that Intervenors purchased the Property based upon the prior zoning officer's representations that the Property was buildable and Intervenors justifiably relied upon those statements in purchasing and clearing the Property and buying materials for construction of a single-family home thereon.

Upon review of the record, the parties' arguments, and the law, we conclude common pleas ably addressed and resolved Township's arguments. Accordingly, following our careful review, we affirm on the basis of the thorough and well-

---

[5] Because common pleas took no additional evidence, our review is limited to determining whether the Board erred as a matter of law or abused its discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014).

[6] The Board adopted Intervenors' brief. (Board's Br. at 5.)

5

reasoned opinion of the Honorable Jennifer R. Sletvold in *Forks Township v. Forks Township Zoning Hearing Board* (C.P. Northampton, No. C-48-CV-2022-03105, filed June 12, 2023) (appended hereto).

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Forks Township,                              :
                        Appellant            :
                                             :
           v.                                :     No. 753 C.D. 2023
                                             :
Forks Township Zoning Hearing                :
Board                                        :

## O R D E R

     **NOW**, June 7, 2024, the Order of the Court of Common Pleas of Northampton County, filed June 12, 2023, is **AFFIRMED.**

_____

**RENÉE COHN JUBELIRER,** President Judge

FORKS TOWNSHIP                      :
                                    :
               Appellant,           :          No.    C-48-CV-2022-03105
                                    :
        v.                          :
                                    :
FORKS TOWNSHIP                      :          ZONING APPEAL
ZONING HEARING BOARD                :
                                    :
               Appellee.            :

## OPINION OF THE COURT

Appellant, Forks Township ("Township"), brings this appeal from a decision of the Forks

Township Zoning Hearing Board ("Board") dated April 27, 2022 ("Board Decision") in which

the Board overturned the determination of the Township Zoning Officer to deny Intervenors',

Lee Woo and Wen Hsin Hsiung ("Intervenors"), application for a building permit to construct a

single-family dwelling on the Subject Property[1] owned by Intervenors. For the reasons stated

herein, we affirm the decision of the Board.

### FACTUAL AND PROCEDURAL HISTORY

The parties primarily agree on the relevant facts. Intervenors are the owners of the

Subject Property, located at 1508 Cottage Street, Forks Township, Northampton County,

Pennsylvania (hereinafter, "Subject Property"). Intervenors reside at 1500 Cottage Street, an

adjoining property. The Subject Property is 12,000 square feet in size and has frontage on

Cottage Street.

The Property is located in the CR Country Residential District (the "CR District") of the

Township. Although the minimum lot size in the CR District is currently 15,000 square feet, it is .

---

[1] The tax parcel identification number for the Subject Property is K9SE2-8-2C. *See* Board Decision, Finding of Fact at ¶ 2.

1

not in dispute that the Subject Property is a lawful preexisting nonconforming lot. *See* Board Decision, Conclusions of Law at ¶¶ 3-5. The Subject Property meets all other dimensional requirements of the CR District for single-family dwelling use. *See* Board Decision, Conclusions of Law at ¶ 10.

The Subject Property was previously owned by Greg and Sue Laros. In early 2019, Mr. and Mrs. Laros contacted the Township to determine whether the Subject Property could be used as a buildable lot. The Township's then Zoning Officer, Timothy R. Weis, ("Mr. Weis") responded with a written letter, dated February 11, 2019, wherein Mr. Weis indicated, *inter alia*, "[b]ased on the information provided to me and with the stipulations noted above, I determine this to be a buildable lot." *See* Letter of 2/11/19, Exhibit "A-1" of Certified Record filed on 11/29/22 ("Certified Record").[2] Ultimately, Mr. and Mrs. Laros did not apply for a building permit for the Subject Property.

On or about 2019, a general contractor and home builder, Barry Fehnel ("Mr. Fehnel"), built a home on a lot with an address of 1500 Cottage Street, next to the Subject Property. Notes of Testimony ("N.T."), 1/10/22, at pp. 11-13. That lot exceeded 15,000 square feet and was not a nonconforming lot. *Id.* at p. 13. Mr. Fehnel applied for and obtained the building permit for the construction of the home. *Id.* at p. 12. Mr. Fehnel then sold the newly built home to Intervenors. *Id.* at pp. 12; 32-33; 36-37; 54. Intervenors reside in that home. *See id.* at p. 7.

Intervenors later became interested in purchasing two other vacant lots in the neighborhood and desired to build houses on them. *Id.* at pp. 54-55. Both lots were owned by Mr. Laros, with one (the Subject Property) being the lot next door to Intervenors' newly built

---

[2] In the letter, Mr. Weis also noted that the lot had an in-ground swimming pool installed, with no establishment of a primary use. Since an in-ground swimming pool is an accessory use to a primary use, Mr. Weis indicated that this was not a proper accessory use. *Id.*

home. *Id.* Intervenors requested that Mr. Fehnel construct houses for them on the two lots. *Id.* at p. 55. In furtherance of same, Intervenors authorized Mr. Fehnel on their behalf to contact the Township, specifically, Mr. Weis, in order to ascertain if the lots were buildable. *Id.* Mr. Fehnel sent an email to Mr. Weis on February 19, 2020. *See* Gmail, 2/19/20, Exhibit "A-2" of Certified Record. In that email communication, Mr. Fehnel stated, *inter alia*, that he built a home on 1501 Cottage Street for Intervenors, and that: "The people I sold the house to are purchasing the lots to build on." This included the Subject Property. In that email, Mr. Fehnel indicated, "[w]e just want to make sure you will issue a building permit to build a house on each lot. Obviously they don't want to proceed with the purchase if they can't build." *Id.*

At the hearing before the Board on January 10, 2022, Mr. Fehnel testified that, in response to the email request, Mr. Weis called him and indicated that "…we would be able to build on both of those lots…" N.T., 1/10/22, at p. 23, 25.[3] Mr. Weis indicated that the lots were "grandfathered" and "as long as [Intervenors] met all setback requirements … [they] would be able to get a permit." *Id.* at p. 25. No testimony was presented to refute or contradict the evidence that the prior Zoning Officer, Mr. Weis, had indicated that this was a buildable lot.

Mr. Fehnel advised Intervenors of the letter from Mr. Weis dated February 11, 2019. *Id.* at p. 17. Mr. Fehnel then confirmed that the Subject Property met all setback and dimensional requirements of the Zoning Ordinance for a buildable lot other than the size requirement. *Id.* at p. 19. Mr. Fehnel reviewed a copy of a Northampton County Tax Map and identified many lots in close proximity to the Subject Property that did not meet the current 15,000 square feet minimum lot requirement. *Id.* at p. 48. Mr. Fehnel advised Intervenors to purchase the lots

---

[3] We note that at the hearing, in response to this testimony, counsel for the Township objected on hearsay grounds. The Board permitted the testimony subject to this objection on the grounds that the statements from Mr. Weis could be deemed admissions binding on the Township. *Id.* at 23-24.

3

based upon Mr. Weis' determination that the Subject Property and the adjoining lot were separate buildable lots. *Id.* at p. 52. Intervenors then purchased from Mr. and Mrs. Laros the Subject Property and the adjoining lot with an address of 1510 Cottage Street[4] on February 28, 2020, for which Intervenors received separate deeds. *Id.* at pp. 19-20. *See also* Deeds, Exhibits "A-9" and "A-10" of Certified Record.

Intervenors first built on 1510 Cottage Street. N.T., 1/10/22, at pp. 28-29. Mr. Fehnel applied for a building permit for this lot, and the Township issued the permit on August 14, 2020. *See* Building Permit No. 2000213, Exhibit "A-3" of Certified Record. This lot, like the Subject Property, was 12,000 square feet in lot size and met all other dimensional requirements of the Ordinance. N.T., 1/10/22 at pp. 28-29. The building permit and certificate of occupancy for this lot were issued to Intervenors without condition and without mention of any restrictions or merger of lots by common owner. *See id.* at pp. 29-31; *see also* Forks Township Residential Certificate of Use and Occupancy Permit No. 200213, Exhibit "A-4" of Certified Record.

Intervenors did not begin construction on the Subject Property until the home they built at 1510 Cottage Street was sold. N.T., 1/10/22 at p. 32. In May of 2021, Mr. Fehnel then filed a building permit application with the Township on behalf of the Intervenors for the Subject Property. *Id.* The Township forwarded the application's grading plan to the Township engineer. *Id.* Gilmore & Associates, Inc. reviewed the grading plans for the Subject Property and issued a review letter dated June 3, 2021. *See* Memorandum, Exhibit "A-5" of Certified Record. The review noted "comments for consideration" by Intervenor's engineer, but it was otherwise devoid of any reference to any zoning provision or doctrine that would have rendered the Subject Property unbuildable. *Id. See also* N.T., 1/10/22, at p. 34.

---

[4] Tax Parcel No. K9SE2-8-2.

4

On August 2, 2021, a new Zoning Officer for the Township, Shawn McGlynn, denied Intervenors' application for a building permit for the Subject Property.[5] *See* N.T., 1/10/22 at pp. 95-96. In the denial letter, Mr. McGlynn stated that the Subject Property must have a minimum of 15,000 square feet of lot area in order to construct a single-family dwelling, and because the Subject Property was 12,000 square feet, the application was denied. *See* Letter, 8/2/21, Exhibit "A-7" of Certified Record.

Mr. McGlynn testified that a 12,000 square foot lot is consistent with the lot size of other lots in the development where the Subject Property is located. *Id.* at pp. 110-111. At the time that he denied the building permit to the Subject Property, he was unaware of any prior communications with Mr. Fehnel, Intervenors, or Mr. or Mrs. Laros. *Id.* at p. 111. He did not have possession or knowledge of Mr. Weis' letter of February 11, 2019 that indicated that the Subject Property was a buildable lot. *Id.* at p. 114. The first time Mr. McGlynn learned of the letter was on the night of the hearing before the Board. *Id.*

Intervenor Lee Woo (a/k/a Alex Woo) testified that he purchased the Subject Property in reliance upon representations made by the prior Zoning Officer that the subject lot was a buildable lot. N.T., 1/10/22, at pp. 54-59. Intervenors paid $32,500 for the Subject Property, and they also presented evidence that they incurred the following additional expenses in reliance on the determination that the Subject Property was buildable: 1) tree clearing in the amount of $9500, Exhibit "A-13" of Certified Record; 2) $3500 in engineering services, Exhibit "A-14" of Certified Record; 3) $3500 for preorderd windows and 4) building permit application fees and legal fees. N.T. 1/10/22 at pp. 60-62.

---

[5] Mr. McGlynn replaced Mr. Weiss as Zoning Officer in July of 2021.

0009a

Intervenors appealed the denial of their application for a building permit for the Subject Property to the Board. The Board held hearings on January 10, 2022, and March 14, 2022 regarding Intervenors' appeal. At the hearing on March 14, 2022, the Board granted the appeal and found in favor of Intervenors to allow the issuance of a building permit for the Subject Property. The Board then issued a written opinion dated April 27, 2022.

In its written opinion, the Board expressly found that Intervenors had presented credible evidence to satisfy the requirements for a variance by estoppel. The Board's findings and conclusions, in relevant part, were as follows:

1) "[the] lot is a pre-existing non-conforming lot." (Board Decision, p. 5, ¶5);

2) "A single family detached dwelling is a use permitted by right in the CR Country Residential District under Section 200-15A.1.(d)." (Board Decision, p. 6, ¶9);

3) "But for the change in the minimum lot area requirement to 15,000 square feet, the [Intervenors] would be permitted by right to construct a single family detached dwelling on the subject property." (Board Decision, p. 6, ¶10);

4) "The majority of the Zoning Hearing Board Members finds that the [Intervenors] have provided sufficient, clear, precise and unequivocal evidence that there was inducement by the prior Zoning Officer, and justifiable reliance on that inducement. Accordingly, the Board finds that the doctrine of equitable estoppel applies here." (Board Decision, p. 8, ¶16);

5) "The satisfaction of the inducement requirement was met by the [Intervenors] with the introduction into evidence of the letter from the prior Zoning Officer, Timothy R. Weis, dated February 11, 2019. In that letter, the prior Zoning Officer made the determination that the subject lot is a buildable lot. This letter, in and of itself, coupled

6

with the testimony by and on behalf of the [Intervenors] that they relied upon this letter in purchasing the lot, clearly establish inducement." (Board Decision, p. 8, ¶17);

6) "The Zoning Hearing Board further finds that the requirement of justifiable reliance on the prior Zoning Officer's determination, to their economic detriment, has also been met by [Intervenors]. The purchase of the subject lot, and expenditures to clear the lot, and prepare for building a single-family residential structure on the property, constituted justifiable reliance to the [Intervenors'] economic detriment. It would cause unnecessary hardship to the [Intervenors], to deprive them of the right and opportunity to construct a single-family dwelling on the property, without compliance with the current minimum area requirement. To deny the application and appeal would render the subject lot useless. (Board Decision, pp. 8-9, ¶18);

7) "…. [Intervenors] should not be deprived of the right to construct a single-family residence on the subject property, because of a change in the identity of the Zoning Officer on behalf of the Township." (Board Decision, p. 9, ¶18);

*See* Board Decision, 4/27/22.

The Township, filed a timely appeal to this Court. The parties submitted briefs in support of their positions. In its Brief, the Township argues, in sum, that the Board erred because: 1) development of the Subject Property as an independent lot is prohibited pursuant to the plain language of the Ordinance at Section 200-35.C(3), which does not allow development of a nonconforming lot if it is one of two or more contiguous lots held in single ownership and merger of the lots would form a more conforming lot; 2) the Board barred the Township from enforcing the Ordinance because any representations concerning whether or not the Subject Property was buildable came a year before Intervenors purchased the Subject Property, and the

7

communication was made by the Township Zoning Officer to the Laroses not Intervenors; and 3) the principles of equitable estoppel do not apply. *See* Township's Brief.

Intervenors argue, in sum, that the doctrines of (1) variance by estoppel, (2) vested rights and (3) equitable estoppel afford them relief and that the Board was correct in determining that Intervenors had presented sufficient, credible evidence regarding all of the requirements necessary for the grant of a variance by estoppel. *See* Intervenors' Brief.

This matter was assigned to the undersigned via the March 14, 2023 argument list. This matter is now ripe for disposition.

## DISCUSSION

### Standard of Review

Where the common pleas court receives no additional evidence in an appeal from a decision of a zoning hearing board, the scope of review is limited to a determination of whether the zoning hearing board committed an abuse of discretion or an error of law. *Amerikohl Min. Inc. v. Zoning Hearing Bd. of Wharton Twp.*, 597 A.2d 219, 221 (Pa. Cmwlth. 1991). This Court may not substitute its interpretation of the evidence for that of the Board, the fact-finder in this case. *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 555 (Pa. Cmwlth. 2014). The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. *Id.* Thus, it is the Board's function to weigh the evidence before it. *Id.* If the record contains substantial evidence, this Court is bound by the Board's findings that result from the resolution of credibility and conflicting testimony. *Id.*

### The Ordinance

Forks Township Zoning Ordinance ("Ordinance") at § 200-35.C (2) and (3) governs the development of non-conforming lots in Forks Township:

8

(2)      Nonconforming lot.  The provisions of this chapter shall not prevent the construction of a structure for a permitted use on an existing lot that was lawful when created and which, prior to the effective date of this chapter, was in single and separate ownership duly recorded by plan or deed; and provided that:

(a)  Such a lot is not less than 80% of the minimum lot area in that district.

(b)  If a lot is not served by central water and central sewage service, it shall have a minimum lot area of one acre and meet state sewage regulations.

(c)  If it is not possible for the lot to meet minimum front and rear yard requirements, then the minimum front yard and/or rear yard may be reduced to 25 feet.

(d)  If it is not possible for the lot to meet minimum side yard requirements for a single-family detached dwelling, then each minimum side yard may be reduced to five feet for a single-family detached dwelling.

(e)  In the case of an irregularly shaped lot, the required lot width along the building setback line shall be no less than the frontage required at the street line in the applicable zoning district, but frontage at the street line may be reduced to not less than 75% of the required street frontage.

(3) This exception shall not apply to any two or more contiguous lots in a single ownership as of or subsequent to the effective date of the provisions of this chapter that made the lot nonconforming, where a merger or resubdivision could create one or more lots that would be less nonconforming with this chapter.

Forks Township Zoning Ordinance ("Ordinance") § 200-35.C (2), (3).

A nonconforming lot is "[a] lot the area or dimension of which was lawful prior to the adoption or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment." 53 PS §10107(a).

*See also* Ordinance at § 200-60.

### Equitable Estoppel

In *Victory Gardens, Inc. v. Warrington Township Zoning Hearing Bd.*, 224 A.3d 1110 (Pa. Cmwlth. 2020), the Commonwealth Court summarized the law regarding equitable estoppel[6] in zoning matters as follows:

---

[6] Intervenors requested relief in this matter based on the doctrines of variance by estoppel, vested rights, and equitable estoppel.  Although the aforementioned theories initially appear to be three separate and distinct theories

9

In the absence of a variance granted by a relevant zoning authority, individuals in the Commonwealth may acquire a right to continue a use that is otherwise not permitted under a number of different, equity-based legal theories including equitable estoppel. *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010). Equitable estoppel is an unusual remedy granted only in extraordinary circumstances. *Id.* To establish equitable estoppel, a landowner must prove that "the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation." *Id.* Additionally, the landowner must establish the following elements of good faith action on his part: " '1) that he relies to his detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost.' " *Id.* (quoting *Vaughn v. Zoning Hearing Bd. of Twp. of Shaler*, 947 A.2d 218, 224–225 (Pa. Cmwlth. 2008)) (internal brackets omitted). A landowner must prove these essential factors by clear, precise, and unequivocal evidence. *See Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009).

*Victory Gardens, Inc.*, 224 A.3d at 1115 (citations in original).

In order to apply equitable estoppel to a governmental agency, the party sought to be estopped: (1) must have intentionally or negligently misrepresented some material fact, (2) knowing or having reason to know that the other party would justifiably rely on the misrepresentation and (3) inducing the other party to act to his detriment because of his justifiable reliance on the misrepresentation. *Cicchiello v. Bloomsburg Zoning Hearing Bd.*, 617 A.2d 835 (Pa. Cmwlth. 1992). Unlike the considerable hardship burden placed on an applicant in a traditional variance application, the hardship required to apply equitable estoppel may take the form of the loss of expenditures made in reliance on a municipality's misrepresentation or the loss of sources of income that would result from the enforcement of a zoning ordinance. *Victory Gardens, Inc.*, 224 A.3d at 1116 (additional citations omitted).

---

of law, the Commonwealth Court of Pennsylvania has indicated these aforementioned three equitable principles have been used interchangeably and share common elements. Accordingly, the labeling of the theory "is of no moment". *Vaughn v. Zoning Hearing Bd. of Twp. Of Shaler*, 947 A.2d 218, 225 n. 12 (Pa. Cmwlth. 2008).

0014a

In *Vaughn v. Zoning Hearing Bd. of Twp. Of Shaler*, 947 A.2d 218 (Pa. Cmwlth. 2008), the Febbraros, owners of a single-family residence, desired to construct a retaining wall along the edge of their property. *Vaughn*, 947 A.2d at 220. The zoning officer informed the Febbraros that they were permitted to construct the retaining wall on their property line without any permits. *Id.* Mr. Febbraro sent a confirming email and letter to the zoning officer memorializing the zoning officer's opinion that no permits were required. *Id.* The Febbraros constructed the wall and substantially completed it. *Id.* The Vaughns, neighbors of the Febbraros, took issue with the construction. *Id.* Ultimately, the Febbraros filed an application with the zoning hearing board requesting a variance from the relevant ordinance's setback and permit requirements so that they could keep their completed retaining wall at its present location and height. *Id.* at 222. The zoning hearing board issued an order allowing the Febbraros to keep the retaining wall at its present location and height under the doctrine of variance by estoppel. *Id.* at 223. The Vaughns appealed to the trial court. *Id.* The trial court, without taking additional evidence, agreed with the Vaughns and held that the board did not have the authority to fashion equitable remedies. *Id.* The trial court also determined that the Febbraros failed to establish the elements for a variance pursuant to section 910.2(a) of the MPC, 53 P.S. § 10910.2(a). *Id.* The Febbraros appealed to the Commonwealth Court.

The Commonwealth Court in *Vaughn* first addressed the issue as to whether equitable relief is available in zoning cases. Citing *Sheedy v. Zoning Bd. of Adjustment of City of Philadelphia*, 409 Pa. 655, 187 A.2d 907 (1963), the Commonwealth Court held that equitable estoppel can be properly utilized to preclude municipalities from enforcing their land use regulations or from denying relief from the terms of a regulation. *Vaughn*, 947 A.2d at 223. The Commonwealth Court held that to do otherwise would create an unnecessary hardship by virtue

11

of the landowner's detrimental reliance on municipal inaction, active acquiesce or misrepresentation. *Id.* The Commonwealth Court then determined that the Febbraros clearly met the criteria for equitable relief established under Pennsylvania law and reversed the trial court. *Id.* at 224. The Court stated:

> Here, the Febbraros established that: (1) they relied on Vita's repeated representations that they could build their retaining wall up to the edge of their property line without obtaining any permits; (2) based on that reliance, they made substantial expenditures by building the retaining wall; (3) they innocently believed, pursuant to Vita's representations concerning the Ordinance, that their retaining wall was a permitted use and that they could build it at its present location and height; and (4) the enforcement of the Ordinance would require them to remove the wall and expend an additional $20,000.

*Id.* at 225. *Contra Yocum v. Zoning Hearing Bd. of Borough of Wyomissing*, No. 2176 C.D. 2007, 2008 WL 9403192 (Pa. Comwlth. 2008) (unreported memorandum decision) (doctrine of equitable estoppel did not apply to entitled appellants to a variance to conduct nonprofit and for businesses on residential property where they failed to establish necessary element of unnecessary hardship); *Grim v. Zoning Hearing Bd. of Perry Twp.*, No. 2482 C.D. 2015, 2016 WL 7176944 (unreported memorandum decision) (property owners failed to establish sufficient hardship to support variance by estoppel where landowners previously operated a golf course on the property and the record was void of any other evidence that shows the property was not susceptible to a valuable permitted use in the absence of a variance).

While we recognize that a "variance by estoppel is an unusual remedy under the law and is granted only in the most extraordinary of circumstances",[7] in the matter *sub judice*, we agree with the Board that the doctrine appropriately applies. The totality of the facts of this matter support the imposition of the doctrine of equitable estoppel. Mr. Fehnel, acting as agent for

---

[7] *See Skarvelis v. Zoning Hearing Board of Dormont*, 679 A.2d 278, 281 (Pa. Cmwlth. 1996).

0016a

Intervenors, was not only in possession of a letter from the prior Township Zoning Officer indicating that the Subject Property was, in fact buildable, but Mr. Fehnel also followed up with the then Zoning Officer to confirm same, prior to the Intervenors purchasing the Subject Property.[8] Intervenors established that they would not have purchased the property and expended substantial sums absent the information from the Township that the lot was buildable. Thus, we agree with the Board's determination that Intervenors met the inducement requirement.

We also find that the Board's finding of justifiable reliance was proper. Intervenors purchased the Subject Property, incurred expenditures to clear the lot, and prepared for building a single-family residential structure on the property. This constitutes justifiable reliance. We further agree that it would impose an unnecessary hardship on Intervenors to deprive them of the right and opportunity to construct a single-family residential structure on the property and that the Subject Property would be otherwise rendered useless.

In addition, before the Intervenors sought to build on the Subject Property and were denied a building permit by the new Township Zoning Officer, they had sought and received a building permit for an adjacent lot of a size equal to the Subject Property. They were permitted to, and did, build a home on that lot, and they received a certificate of occupancy and then sold that lot. The Township permitted that construction without seeking to enforce the doctrine of merger as it does in the instant case, even though Intervenors owned both lots at the time. We find no prejudice to the Township from the decision of the Board. It is not in dispute, and the new Township Zoning Officer even admitted, that the lot size of the Subject Property is consistent with the size of many other lots in the same development.

---

[8] The Board noted that the additional communications with the prior Zoning Officer were objected to on a hearsay basis, and the Board did not rely upon that evidence in making its determination. The Board also noted that the Township did not present any evidence that the prior Zoning Officer did not continue to indicate that this was a buildable lot. *See* Board Decision, 4/27/22.

13

We acknowledge the Township's position regarding merger of lots by a common owner, and absent the existence of estoppel in this matter, those provisions of the Ordinance may have precluded the issuance of a building permit. However, for all of the reasons stated by the Board, we agree with the Board that estoppel applies.

## CONCLUSION

**WHEREFORE,** we enter an Order consistent with this Opinion.

BY THE COURT:

_____
JENNIFER R. SLETVOLD, J.

14

## IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
## CIVIL DIVISION – LAW

FORKS TOWNSHIP                          :
                                        :
     Appellant,              :     No.    C-48-CV-2022-03105
                                        :
v.                                      :
                                        :
FORKS TOWNSHIP                          :     ZONING APPEAL
ZONING HEARING BOARD                    :
                                        :
     Appellee.               :

### ORDER OF COURT

AND NOW, this 12th day of June, 2023, upon consideration of the appeal of Forks

Township, it is hereby **ORDERED** that the decision of the Forks Township Zoning Hearing

Board, set forth in the "Zoning Hearing Board of Forks Township Report of Board Decision",

dated April 27, 2022, is affirmed, as addressed in the attached Opinion.

BY THE COURT:

_____
JENNIFER R. SLETVOLD, J.