Victory Gardens, Inc., : 
                Appellant : 
                      : 
        v. : 
                      : 
Warrington Township Zoning Hearing :   No. 1716 C.D. 2018
Board and Warrington Township :   Argued: November 14, 2019

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE FIZZANO CANNON          FILED: January 6, 2020

Victory Gardens, Inc. (VG) appeals from the November 30, 2018 order of the Court of Common Pleas of Bucks County (trial court) affirming a May 12, 2017 decision by the Warrington Township Zoning Hearing Board (Board) that denied VG's appeal of an enforcement notice and determination made by Warrington Township's (Township) zoning officer that VG's mulching operation violated the Warrington Township Zoning Ordinance. Upon review, we reverse.

VG has conducted mulching operations in the Township since 1993. *See* Decision of the Warrington Township Zoning Hearing Board, May 12, 2017 (Board Decision), Background Section (Background) ¶ 5. In 1999, Michael Butler, VG's owner and president, consulted with the Township's then-zoning officer, who erroneously advised that mulching operations were permitted within the Township at two locations, one of which was the Winding Brook Farm (the Farm), which is

located within the Township's Residential Agricultural Zoning District (RA District).[1]  *See* Board Decision, Background ¶¶ 3 & 6-7; *see also* Board Decision, Findings of Fact (F.F.) ¶¶ 22 & 24.  Thereafter, and in reliance on the Township's zoning officer's representations of legality, VG entered into a lease to occupy an eight-acre portion of the Farm and began conducting a mulching operation thereon.  *See* Board Decision, Background ¶¶ 5 & 8; *see also* Board Decision, F.F. ¶¶ 25-26.  The Township was fully aware of VG's mulching operation at the Farm, periodically inspecting VG's operation and even patronizing VG's services on multiple occasions since 1999, and buying and receiving donations of mulch for parks, playgrounds, clubs, and Township events.  *See* Board Decision, F.F. ¶¶ 31-32 & 34.

Additionally, between 1999 and 2013, VG and the Township conferred with one another and consistently worked together to resolve issues relating to VG's mulching operation, including attending to and resolving concerns and complaints pertaining to traffic from and the hours of operation of VG's mulching operation.  *See* Board Decision, F.F. ¶ 28, 32-33, 37-46 & 59-62.  Over the years, the Township and VG entered into a number of agreements stemming from discussions and meetings regarding these concerns.  *Id.* ¶¶ 35, 37-46 & 59-62.  At no time did the Township ever inform VG that its mulching operation was illegal and instead told VG that the use was "right by Ordinance," allowed at the Farm, and allowed by right in the Township's RA District.  *Id.* ¶¶ 29-30.  Further, Township officials stated at

---

[1] The Farm is a 216-acre working dairy farm that has been in operation since 1805.  *See* Board Decision, Background ¶¶ 3 & 12.  In addition to raising animals and growing crops, and separate from VG's operation, the owners of the Farm have produced and sold mulch for over 40 years.  *Id.* ¶¶ 12-13.

2

public meetings in 2002 that VG's mulching operation was a permitted use. *Id.* ¶¶ 64-66.

On March 9, 2015, the Township's zoning officer issued a notice of violation informing VG that its mulching operation was an industrial use not permitted in the Township's RA District.[2] *See* Board Decision, Background ¶ 16. VG appealed and the Board conducted 15 hearings between May 20, 2015 and January 30, 2017, with four (4) Board Members participating.

On May 12, 2017, the Board issued a written decision on VG's appeal. *See generally* Board Decision. Two Board Members voted to grant the appeal and two Board Members voted to deny the appeal. *Id.* Thus, by operation of law, VG's appeal was deemed denied.[3] VG appealed and the trial court affirmed the Board Decision on November 30, 2018, without conducting further hearings. VG timely appealed to this Court.[4]

---

[2] The Township initially issued a notice of violation on August 15, 2013, which also alleged that VG's mulching operation at the Farm was an industrial use not permitted in the Township's RA District. *See* Board Decision, Background ¶ 15. VG appealed this notice of violation, which appeal was ultimately withdrawn due to a procedural defect. *Id.*

[3] As this Court has explained:

It is now well settled that, absent a statutory or regulatory provision to the contrary, when an administrative body is equally divided on the outcome of a matter before the body, the tie vote acts as a denial of the requested relief and the subject matter under consideration must remain in status quo.

*Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 433 (Pa. Cmwlth. 2010) (internal citation and emphasis omitted).

[4] "Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the [Board] committed an error of law or a manifest abuse of discretion." *W.J. Menkins Holdings, LLC v. Douglass Twp.*, 208 A.3d 190, 194 n.11 (Pa. Cmwlth. 2019) (internal quotations and citations omitted). "A zoning hearing board abuses its discretion

Initially, we note that the Township has a zoning ordinance that, in Section 402, outlines the uses permitted and prohibited in areas zoned as RA Districts within the Township. *See* Twp. of Warrington, Pa., Code of Ordinances Ch. 27, pt. 4, art. A, § 402 (1995) (Zoning Ordinance); Reproduced Record (R.R.) at 2a-4a. We further acknowledge that no dispute exists in this matter that mulching activities are not an enumerated permitted use in the RA District under Section 402 of the Zoning Ordinance.

VG raises five points of alleged trial court error on appeal. *See* VG's Brief at 4-5. VG claims that the trial court erred in not granting its appeal: (1) by not conducting a *de novo* review of the record and issuing its own findings of fact (*see* VG's Brief at 4 & 23-25); (2) because VG is entitled to equitable relief under the related theories of equitable estoppel, variance by estoppel, and vested rights (*see* VG's Brief at 4 & 25-40); (3) because VG's mulching operation is a permitted by-right use under Section 402 of the Zoning Ordinance (*see* VG's Brief at 4 & 41-46); (4) because VG's mulching operation is permitted as a nonconforming use (*see* VG's Brief at 5 & 46-47); and (5) because VG's mulching operation meets the requirements for a variance (*see* VG's Brief at 5 & 47-50).

### Trial Court Review of the Record

VG initially argues that the trial court erred by not conducting a *de novo* review of the record and issuing its own findings of fact. *See* VG's Brief at 23-25. VG argues that, because the Board's written decision includes two separate findings of facts and conclusions of law: one from the faction of the Board that voted to grant the appeal (the Affirm Faction) and one from the faction of the Board that voted to

---

only if its findings are not supported by substantial evidence." *Id.* "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

deny the appeal (the Deny Faction), neither constitutes findings "of" or "by" the Board, and thus, the trial court was obligated to review the record and propagate its own findings of fact based thereon. *See* VG's Brief at 23-25; *see also generally* Board Decision at 3-11 & 14-33. However, the Deny Faction's Findings of Fact adopted the Affirm Faction's Findings of Fact 21-56 and 58-70, which concern the pertinent facts relating to the applicability of the doctrine of equitable estoppel, which, for the reasons discussed below, is dispositive in this matter. *See* Board Decision, F.F. ¶¶ 21-56, 58-70 & 87. Therefore, because the factions essentially agree to the facts relevant to the dispositive issue of equitable estoppel, we find a remand to the trial court to conduct a *de novo* review and issue separate findings of fact restating those facts to be unnecessary.

### *Equitable Estoppel*

Next, VG contends that the trial court erred by affirming the Board Decision because VG established a right to operate its mulching business in an RA District under any of the theories of variance by estoppel, vested rights, or equitable estoppel. *See* VG's Brief at 25-40. Because we conclude that VG established the necessary elements to prevail under the theory of equitable estoppel, we begin with and address only that issue, as it is determinative.

In the absence of a variance granted by a relevant zoning authority, individuals in the Commonwealth may acquire a right to continue a use that is otherwise not permitted under a number of different, equity-based legal theories including equitable estoppel. *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010). Equitable estoppel is an unusual remedy granted only in extraordinary circumstances. *Id.* To establish equitable estoppel, a landowner must prove that "the municipality

5

intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation." *Id.* Additionally, the landowner must establish the following elements of good faith action on his part: "'1) that he relies to his detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost.'" *Id.* (quoting *Vaughn v. Zoning Hearing Bd. of Twp. of Shaler,* 947 A.2d 218, 224–225 (Pa. Cmwlth. 2008)) (internal brackets omitted). A landowner must prove these essential factors by clear, precise, and unequivocal evidence. *See Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009). Additionally, we acknowledge that:

> [T]his Court may not substitute its interpretation of the evidence for that of the Board, the fact-finder in this case. The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. Thus, it is the Board's function to weigh the evidence before it. If the record contains substantial evidence, this Court is bound by the Board's findings that result from the resolution of credibility and conflicting testimony.

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 555 (Pa. Cmwlth. 2014) (quoting *Oxford Corp. v. Zoning Hearing Bd. of the Borough of Oxford,* 34 A.3d 286, 295 n.9 (Pa. Cmwlth. 2011)) (emphasis omitted).

VG argues that the trial court erred by denying it equitable relief based on the theory of equitable estoppel because the evidence illustrates that VG relied on a misrepresentation by the Township in 1999 that it would be allowed to operate

6

a mulching operation without obtaining a permit and because the Township's actions thereafter continually confirmed this error. *See* VG's Brief at 25-28. We agree.

As stated, to attain a variance by equitable estoppel, a landowner must prove, among other things, the "municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation." *Lamar*, 997 A.2d at 441. Additionally, we note that, unlike the considerable hardship burden placed on an applicant in a traditional variance application,[5] the hardship required to apply equitable estoppel may take the form of the loss of expenditures made in reliance on a municipality's misrepresentation or the loss of sources of income that would result from the enforcement of a zoning ordinance. *See Dombroski v. Dallas Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1050 C.D. 2018, filed May 21, 2019),[6] slip op. at 15 (loss of expenditures to convert first floor of building to apartment and continued rental income satisfied the hardship requirement for the application of equitable estoppel); *Vaughn*, 947 A.2d at 225 (finding that substantial expenditures to build a retaining wall and the anticipated

---

[5] In a traditional variance application matter,

> [t]o show unnecessary hardship an applicant must prove that either: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance.

*Lamar*, 997 A.2d at 443. Further, "[t]he applicant must show the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district." *Id.*

[6] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value.

7

cost of removal of the wall satisfied the hardship requirement for the application of equitable estoppel).

Here, the evidence revealed that, prior to establishing its mulching operation at the Farm, VG consulted with the Township's zoning officer at the time who informed VG that it could lawfully operate a mulching operation at the Farm without a permit. *See* Board Decision, F.F. ¶¶ 22 & 24. This information provided by the Township's zoning officer was erroneous.[7] *Id.* ¶ 24. However, in reliance on this misrepresentation, VG began its mulching operation in earnest. *Id.* ¶¶ 25-26. The Township was completely aware of VG's mulching operation, which it periodically both inspected and patronized over the years without ever informing VG that the operation was illegal. *Id.* ¶¶ 29, 31-32 & 34.

Further, over the course of the next 14 years and through a succession of meetings, discussions, and agreements with VG regarding various aspects of VG's mulching operation and its effect on the area around the Farm, the Township repeatedly confirmed that VG was allowed to run its mulching operation at the Farm without a permit and/or variance. *See* Board Decision, F.F. ¶ 28. The Township explicitly told VG that its mulching operation was "right by Ordinance," that VG's operation was allowed at the Farm, and that a mulching operation was allowed by right in the Township's RA District. *Id.* ¶ 30. In 2002, a Township Supervisor incorrectly stated at a Board of Supervisor's meeting that "a mulch[ing] operation was an approved farm operation according to the state definition." *Id.* ¶ 64. Also in 2002, other Township officials provided opinions at a public meeting that mulching

---

[7] No evidence or assertion in this case suggests that this misrepresentation on the part of the Township was anything other than a negligent one.

operations were considered agricultural activities and that VG's operation was a permitted use. *Id.* ¶ 66.

Additionally, since 1999, the Township and VG entered into multiple agreements resulting from numerous work-out sessions between VG and representatives of the Board and its professional staff. *See* Board Decision, F.F. ¶¶ 33, 35 & 59-62. VG conducted engineering studies and performed development improvements to the Farm at the request of the Township. *Id.* ¶ 37. At the request of the Township, VG instituted a plan regarding its hours of operation and its traffic patterns, and agreed to use only certain Farm entrances/exits on a limited schedule. *Id.* ¶¶ 38-42, 44 & 46. In further cooperation with Township requests, VG conducted a safe sight distance study and altered the Farm grounds in accordance with the study. *Id.* ¶ 43. Additionally, as a result of meetings with the Township and neighbors, VG widened and paved driveways, installed berms and trees around its operation, and reduced its hours of operation. *Id.* ¶ 45. More recently, VG and the Township entered into a Memorandum of Understanding[8] setting forth terms regarding VG's mulch operation at the Farm, which the Board adopted unanimously at a public meeting held on March 21, 2012. *Id.* ¶¶ 59-62.[9]

Regarding VG's substantial expenditures and hardship, the hearing evidence indicated the following: to commence its operation in 1999, VG initially purchased a new tub grinder, new dump trucks, and a new wheel loader for a total

---

[8] As the Board noted, "The [Memorandum of Understanding] is a binding and enforceable agreement between VG and the Township." Board Decision, F.F. ¶ 62.

[9] The Memorandum of Understanding makes specific reference to the fact that the understandings relate to "the mulch season beginning March 1 and ending June 20." Memorandum of Understanding, p. 2.

of $413,00.00, and then acquired a retail facility to sell the mulch it produced at the Farm for $942,000.00.[10] *See* Board Decision, F.F. ¶¶ 47-48. Thereafter, VG completed, at the Township's request but VG's cost, engineering studies and site improvements totaling approximately $182,500.00. *Id.* ¶¶ 49-55. Additionally, the continued employment of VG's 15-20 employees would be jeopardized if VG was forced to cease operations at the Farm. *Id.* ¶ 27.

These findings, agreed upon by both the Board's Affirm Faction and Deny Faction, represent clear, precise and unequivocal evidence that VG operated its mulching business and made substantial expenditures in reliance on a misrepresentation(s) by the Township, and that VG would suffer the hardships of loss of substantial expenditures were the ordinance enforced. Therefore, VG established the necessary elements to prevail under the theory of equitable estoppel.

We acknowledge the trial court's conclusion that VG did not act in good faith or proceed with clean hands as evidenced by its alleged repeated violations of various Township codes and the 2012 Memorandum of Understanding, thereby precluding the application of equitable estoppel in this matter. *See* Trial Court Opinion at 30. We note, however, that the good faith contemplated for the application of equitable estoppel to zoning matters centers on a landowner's innocent belief that the use of land is permitted at the time a misrepresentation is made by a township official. *See Vaughn*, 947 A.2d at 225 (quoting *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002) (stating that one element of good faith for equitable estoppel is that the landowner's reliance is "based upon an innocent belief that the use is permitted")). While VG's failure to adhere to the terms of the

---

[10] VG expended $192,000.00 in initial rental fees before purchasing the retail facility for an additional $750,000.00. *See* Board Decision, F.F. ¶ 47.

Memorandum of Understanding regarding its mulch operation or various Township codes may be relevant in an enforcement action, consideration of these violations is not relevant to whether VG had an innocent belief that the use was permitted based on the Township's misrepresentations and actions occurring for over a decade prior to the parties entering into the Memorandum of Understanding.

Likewise, the trial court's conclusion that, because the evidence of record did not indicate that the Township's zoning officer advised VG that it could conduct mulching operation "on an industrial scale," VG was not justified in relying on the zoning officer's advice to later expand the scale of its operation, is also misplaced. *See* Trial Court Opinion at 28-29. As discussed *supra*, the evidence of record indicated that the Township, through its zoning officer, informed VG that a mulching operation was permitted at the Farm without the need for a permit. *See* Board Decision, Background ¶¶ 3 & 6-7; *see also* F.F. ¶¶ 22 & 24. VG relied on this information and began a mulching operation. *See* Board Decision, Background ¶¶ 5 & 8; *see also* F.F. ¶¶ 25-26. The subsequent expansion of VG's operation is irrelevant to whether VG initially innocently relied on the zoning officer's misrepresentation. To the extent that VG could rely on the use being permitted in the zoning district, VG could also rely upon the expansion of that use to the extent that it conformed to the other requirements of the zoning ordinance for that district (i.e., dimensional requirements). *See Itama Dev. Assocs., LP v. Zoning Hearing Bd. of Twp. of Rostraver*, 132 A.3d 1040, 1051 (Pa. Cmwlth. 2016) (noting in the context of a nonconforming use that the doctrine of natural expansion generally permits the development or expansion of a business as a matter of right once the legality of the business has been established). Further, we note that the Township's subsequent

11

actions illustrated both that the Township had knowledge of and condoned VG's expanded operations thereafter. *See* Board Decision, F.F. ¶¶ 31-32 & 34.

Accordingly, because the trial court erred by affirming the Board's denial of VG's appeal, we reverse the trial court's order.[11]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[11] Because we find VG has established the necessary elements to prevail under the theory of equitable estoppel, this claim is dispositive of this matter. Accordingly, we need not examine VG's remaining claims herein.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victory Gardens, Inc., :
                   Appellant :
                   :
           v. :
                   :
Warrington Township Zoning Hearing :   No. 1716 C.D. 2018
Board and Warrington Township :

## O R D E R

AND NOW, this 6th day of January, 2020, the November 30, 2018 order of the Court of Common Pleas of Bucks County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge