IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                :

                                :

       v.               : No. 730 C.D. 2023

                                : Argued: June 6, 2024

Flexible Flyer Studios, L.P.,     :

                    Appellant :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                        FILED: July 16, 2024

Flexible Flyer Studios, L.P. (Flexible Flyer) appeals from the order dated June 2, 2023, by the Court of Common Pleas of Philadelphia County (trial court), which granted a permanent injunction in favor of the City of Philadelphia (City). The trial court concluded Flexible Flyer failed to correct violations of the Philadelphia Code[1] (Code) at a property it owned (Property) and imposed a $144,820 fine. The trial court directed Flexible Flyer to correct the violations or, alternatively, permitted the City to correct the violations and collect the cost from Flexible Flyer. After careful review, we affirm.

---

[1] Phila., Pa., The Philadelphia Code (2020).

# BACKGROUND

The City filed a complaint against Flexible Flyer on August 3, 2022. The City alleged the Property was in violation of the Code and requested that the trial court enter an order directing Flexible Flyer to correct the violations.[2] Alternatively, the City requested permission to correct the violations and collect the cost from Flexible Flyer. The City averred it inspected the Property and sent an initial notice of Code violations to Flexible Flyer on or about August 26, 2019. The City attached a copy of the initial notice to its complaint, which described "[l]oose and missing bricks along the South and East walls" and "spalling concrete along the South elevation" of the Property. R.R. at 30. The City averred it reinspected the Property on April 7, 2021, and sent a final notice to Flexible Flyer on March 8, 2022, because the Code violations remained uncorrected. The City requested that the trial court award $1,448,200 in fines, representing 557 days of ongoing violations from September 29, 2019,[3] to April 7, 2021, and $100 in reinspection fees.[4]

Flexible Flyer filed an answer with new matter to the City's complaint on March 21, 2023. Flexible Flyer averred it did not receive the notices of Code violations but, nonetheless, submitted plans to the City to repair the Property and

---

[2] The Property primarily consists of an industrial building constructed in 1922, which is about 150,000 square feet in size. *See* Reproduced Record (R.R.) at 176, 249.

[3] The City's use of September 29, 2019, as the start date for imposing fines was inconsistent with its initial notice of Code violations. The initial notice indicated the City would reinspect the Property "on or about 09/29/19 to determine compliance," but "[f]ines shall be imposed from 08/26/19." R.R. at 30-31.

[4] The City was initially unable to serve Flexible Flyer with its complaint and filed a motion for alternative service on January 20, 2023. Although counsel for Flexible Flyer entered his appearance on November 29, 2022, the City averred counsel declined to accept service. By order dated January 24, 2023, the trial court granted alternative service by first class mail and posting of the Property.

2

had nearly completed the repairs. Flexible Flyer averred the COVID-19 pandemic delayed its ability to make repairs and blamed the City for "shifting the goal posts" and requiring repeated revisions of its plans. R.R. at 37-38. The City filed a reply to Flexible Flyer's new matter on April 14, 2023. The trial court issued an interim order, dated May 1, 2023, which directed Flexible Flyer to correct the Code violations at the Property and scheduled a hearing to determine compliance.

The trial court held a hearing on May 18, 2023, during which the City presented testimony from Thomas Rybakowski (Rybakowski), a construction compliance supervisor with the Department of Licenses and Inspections. Rybakowski testified the City sent notice of the Property's condition to its previous owner and then sent the August 26, 2019 initial notice to Flexible Flyer after it purchased the Property. R.R. at 232. Flexible Flyer did not appeal the notice but applied for a "make safe permit," which the City granted on January 21, 2020. *Id.* at 232, 239. Rybakowski testified work under a make safe permit must be "continuous until the property is deemed safe." *Id.* Because Flexible Flyer's work on the Property was not continuous, its permit expired in approximately the summer of 2020. *Id.* Rybakowski was not aware of Flexible Flyer requesting an extension, although the City "did not shut down" during the COVID-19 pandemic with respect to make safe permits. *Id.*

Rybakowski agreed Flexible Flyer applied for additional make safe permits in the spring and summer of 2022, but the City requested "additional information." R.R. at 236. The City did not authorize Flexible Flyer to begin work until December 2022, after it applied for a permit a third time. *Id.* at 236, 241. Rybakowski reviewed photographs of the Property during his testimony, which revealed a collapse of part of the Property's façade. *Id.* at 235. The photographs also revealed unapproved

3

demolitions on the Property and a "junk yard or salvage yard or repair shop" operating there. *Id.* at 233-36. Rybakowski testified he conducted a field inspection in April 2023 and identified new concerns with the Property, which Flexible Flyer agreed to address. *Id.* at 241-45. Rybakowski explained Flexible Flyer made repairs to the Property, but it "still is designated as unsafe and until all the work is completed and the permit is final-ed [sic] the property is still designated as that." *Id.* at 236-38, 247.

Flexible Flyer responded with testimony from one of its principals, Tobias Biddle (Biddle). Biddle described himself as an experienced real estate developer who successfully renovated another, similar property and owned over 100 other properties in the City either directly or through a business entity. R.R. at 249-51. Biddle testified Flexible Flyer purchased the Property in hopes of renovating it "into a commercial or commerce center within the neighborhood, which lacked such a feature." *Id.* at 249. He testified it was a challenging project given the high degree of crime and vandalism in the neighborhood and anticipated it would require "multiple millions of dollars of investment." *Id.* at 249-50. Biddle explained Flexible Flyer was aware of Code violations when it purchased the Property and retained LEV Construction to make the necessary repairs. *Id.* at 250-51.

Flexible Flyer also presented testimony from LEV Construction's project manager Treavor Yeager (Yeager). Yeager testified he was present during Rybakowski's field inspection of the Property. R.R. at 252. He explained the inspection occurred because "we were not seeing eye to eye with what the City was requiring of us. . . . So we wanted to bring them on site and get all parties together to simply understand what they require and what they need from us to close out this permit." *Id.* Yeager agreed the City identified "additional work on different

4

elevations of the building" during the field inspection. *Id.* at 253. Nonetheless, Yeager characterized the repairs as nearly complete, testifying LEV Construction had "done everything [it] can to try and comply with this permit." *Id.* at 253-54.

The trial court granted a permanent injunction in the City's favor by order dated June 2, 2023. The trial court found the City served Flexible Flyer with its initial notice, indicating the Property was in violation of the Code. R.R. at 55. Moreover, the trial court found Flexible Flyer failed to make the necessary repairs. *Id.* at 56. The trial court imposed a fine of $144,820 against Flexible Flyer, one tenth of what the City requested, and directed Flexible Flyer to correct the Property's Code violations. *Id.* at 56-57. The trial court also granted the City's alternative request that it be permitted to correct the violations and collect the cost if Flexible Flyer failed to do so. *Id.* at 57.

Flexible Flyer filed a motion for post-trial relief on June 7, 2023, arguing it did not receive the City's final notice of Code violations.[5] Flexible Flyer emphasized its efforts at compliance, including plans it submitted to the City and repairs to the Property, and criticized the trial court's imposition of a $144,820 fine as lacking evidentiary support. On June 28, 2023, while the motion for post-trial relief was pending, Flexible Flyer filed a notice of appeal from the trial court's June 2, 2023 order. The City filed a notice of cross-appeal on July 12, 2023. In addition, the City filed a combined cross-motion for post-trial relief and response to Flexible Flyer's motion for post-trial relief on July 31, 2023. The City challenged the trial court's imposition of a $144,820 fine, arguing the amount was too small given Flexible Flyer's relative sophistication, lengthy delay in making repairs despite significant

_____

[5] Flexible Flyer now conceded it received the initial notice of Code violations. *See* Mem. of Law in Supp. of Mot. for Post-Trial Relief, 7/10/23, at 33-34 (Flexible Flyer arguing it "did what any noticed owner is expected to, and should do, upon receiving" the initial notice).

5

financial resources, and lack of contrition. The City argued the trial court should have at least imposed what it calculated to be the statutory minimum fine of $501,300.

By order dated September 15, 2023, the trial court denied both motions for post-trial relief and entered judgment. In an opinion accompanying the order, the trial court explained it admitted the City's final notice of Code violations without objection, which showed the City reinspected the Property on April 7, 2021, and discovered none of the violations identified in the initial notice were corrected. R.R. at 61-63. The trial court deemed Flexible Flyer's argument that it did not receive the final notice "moot" because Flexible Flyer conceded it received the initial notice and failed to file an administrative appeal. *Id.* at 62. It is the initial notice that gives a property owner the right to appeal, the trial court reasoned, rather than the final notice. *Id.* The trial court emphasized the danger the Property posed to the public, noting part of its façade collapsed. *Id.* at 63.

Further, the trial court defended its imposition of a $144,820 fine, explaining it considered aggravating and mitigating factors before imposing a fine that was only one tenth of what the City requested. *Id.* at 65-66. In terms of aggravating factors, the trial court cited the length of time the Property was in violation of the Code, Flexible Flyer's resources and experience with real estate development, and the danger the Property posed to the public. *Id.* Mitigating factors included Flexible Flyer's belated efforts at compliance, the lack of actual harm to the public, and Flexible Flyer's "good character with the intent to illuminate and bring life to a forgotten section of Philadelphia." *Id.* at 66. The trial court concluded the City's cross-motion for post-trial relief was untimely. *Id.*

6

The City filed a praecipe to discontinue its cross-appeal on September 20, 2023. Thus, Flexible Flyer's appeal is all that remains for this Court to consider. On appeal, Flexible Flyer repeats the issues raised in its motion for post-trial relief.[6] Flexible Flyer argues it did not receive the City's final notice of Code violations and assails the trial court's $144,820 fine as arbitrary, capricious, and against the weight of the evidence.

## DISCUSSION

Flexible Flyer focuses its appeal on the trial court's $144,820 fine. In this regard, we review the trial court's order for an abuse of discretion. *See City of Phila. v. DY Props., LLC*, 223 A.3d 717, 724-25 (Pa. Cmwlth. 2019); *Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. 1994). "A trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will. An abuse of discretion is not merely an error of judgment." *DY Props.*, 223 A.3d at 724 (quoting *In re Ten Thousand Six Hundred Eighty Dollars*, 728 A.2d 403, 406 (Pa. Cmwlth. 1999)).

The Code directs City officials to serve a written notice of violation on a noncompliant property's owner, his or her agent, the property's occupant, or the

---

[6] Because the trial court's June 2, 2023 order "enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted" and was effective before the entry of judgment, it was immediately appealable as of right without the need to file motions for post-trial relief. *See* Pennsylvania Rule of Appellate Procedure 311(a)(4)(ii), Pa.R.A.P. 311(a)(4)(ii); *Wolk v. Sch. Dist. of Lower Merion*, 197 A.3d 730, 741 n.16 (Pa. 2018). Even if this was not the case, the trial court denied the motions for post-trial relief and entered judgment. We would treat Flexible Flyer as having filed an appeal from the trial court's judgment, which was the final order for appellate purposes. *See Wolk*, 197 A.3d at 735 (citing *Thomas A. Robinson Family Ltd. P'ship v. Bioni*, 178 A.3d 839, 844 (Pa. Super. 2017)); Pennsylvania Rule of Appellate Procedure 905(a)(5), Pa.R.A.P 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

person responsible for the property. Code § A-502.3. If the person served is not the owner, the City must send notice by first class mail to the last registered owner. *Id.* A notice of violation must specify a compliance period not exceeding 35 days in which to correct the identified Code violations. Code § A-502.1. The City must reinspect the property after the compliance period expires. Code § A-503.1. If the property remains noncompliant, and no appeal is pending, the Code requires the City to bring legal proceedings to apply penalties or correct the violations. *Id.*

Any person who violates the Code is subject to a fine. Code § A-601.1. The Code also imposes fines on any person who fails to comply with an order, permit, or certificate issued under its provisions "or who erects, constructs, installs, removes, alters or repairs a structure . . . in violation of the approved construction documents or directive of the code official." *Id.* Significantly, "[e]ach day that a violation continues after the time for correcting the violation as stated in the initial notice of violation has passed, and where no timely appeal has been filed . . . shall be deemed a separate offense for purposes of determining the accrual of fines." Code § A-601.5.

The City's initial notice cited Flexible Flyer for violations of Code § PM-108.1, relating to unsafe structures, and Code § PM-304.1.1(7), relating to unsafe exterior walls. In addition, the City directed Flexible Flyer to obtain the services of a licensed professional engineer to serve as a "design professional in responsible charge," consistent with Code § A-304. Failure to comply with Code § PM-304.1.1(7) and the City's directive under Code § A-304 results in "basic fines" of $300 for each offense, while failure to comply with Code § PM-108.1 is a "Class III offense" with a maximum fine of $2,000. Code §§ 1-109(3)(e), A-601.1, A-601.3(13).

8

In its first issue, Flexible Flyer argues it did not receive the City's final notice of Code violations, which prevented it from filing an administrative appeal. Flexible Flyer's Br. at 41-42, 46-47. Flexible Flyer argues the City failed to present evidence of service or notice. *Id.* In support of this argument, Flexible Flyer emphasizes the City was initially unable to serve its complaint and had to request alternative service from the trial court. *Id.* at 42-43. Flexible Flyer also criticizes the City and the trial court's "myopic and hyper-focused attachment" to the initial notice of Code violations. *Id.* at 43. Flexible Flyer emphasizes it responded to the initial notice by hiring an engineer, submitting plans, and receiving a permit to make repairs. *Id.* at 44-46.

Flexible Flyer's second issue is closely related to its first. Flexible Flyer argues the $144,820 fine the trial court imposed is arbitrary, capricious, and against the weight of the evidence. Flexible Flyer argues the 30-day deadline specified in the initial notice of Code violations was too short for it to prepare plans, receive approval from the City, and complete repairs. Flexible Flyer's Br. at 48. Further, Flexible Flyer argues the COVID-19 pandemic prevented it from completing the repairs as planned. *Id.* at 47. Flexible Flyer decries the trial court's use of September 29, 2019, as the start date for the fine, arguing it submitted plans in October 2019 and received a permit to make repairs in January 2020. *Id.* Flexible Flyer argues there is no competent evidence to support the use of April 7, 2021, as an end date for the fine because the City failed to provide evidence that an inspection happened on that date. *Id.* at 48-54.

Our review of the record and relevant law supports the trial court's decision. Flexible Flyer concedes it received the City's initial notice of Code violations, dated August 26, 2019. *See* Flexible Flyer's Br. at 44; R.R. at 30-31. Flexible Flyer had

9

the opportunity to file an administrative appeal from the initial notice but did not do so. The initial notice indicated the Property would be reinspected on or about September 29, 2019, to determine compliance. It also explained that "[f]ines shall be imposed from 8/26/19 and shall be assessed in the amount of $150 to $2000 per violation each and every day the violation remains uncorrected." R.R. at 31. The initial notice did not indicate any additional warnings or notices would be forthcoming, nor are additional warnings or notices required under the Code.[7] *See* Code § A-503.1

Flexible Flyer made preliminary efforts to comply with the City's initial notice of Code violations by hiring an engineer, submitting plans, and receiving a permit to make repairs. Despite these preliminary efforts, Flexible Flyer did not complete the repairs. Flexible Flyer blames its failings on the 30-day deadline in the initial notice and the COVID-19 pandemic, but the fact remains Flexible Flyer failed to repair the Property even long after the 30-day deadline passed and widespread shutdowns resulting from the pandemic were over. Flexible Flyer's engineer, Maher Abdelaal, P.E. (Abdelaal) indicated in his report that he inspected the Property on

---

[7] Case law suggests an administrative appeal from a final notice of Code violations is permissible. *See, e.g., DY Props.*, 223 A.3d at 725; *City of Phila. Law Dep't v. Macrillo* (Pa. Cmwlth., No. 1530 C.D. 2019, filed April 11, 2022), slip op. at 2. Moreover, the Code indicates any person who is directly aggrieved "by any notice, order or other action by the code official as a result of any inspection pursuant to this code and the technical codes" may file an appeal. Code § A-801.1. Administrative appeals allow an aggrieved person to challenge the City's interpretation and application of the Code or propose "[a]n equivalent form of construction." *See* Code § A-801.3. Flexible Flyer did not have any apparent basis to file an administrative appeal when the City issued its final notice in this case. To the contrary, it is undisputed the Property was in violation of the Code when Flexible Flyer purchased it and when the City issued its initial notice. *See* Flexible Flyer's Br. at 8, 44. Flexible Flyer then failed to begin repairs on the Property until long after the April 7, 2021 inspection date in the final notice, as discussed below. The trial court ultimately imposed a fine based on Code violations listed in the City's initial notice and on a period of noncompliance ending before the City issued its final notice. Therefore, we discern no prejudice to Flexible Flyer, even if it did not receive the final notice.

10

December 15, 2019, and again on October 22, 2021. During the inspection on October 22, 2021, Abdelaal found that "[t]he existing damages/defects that were observed during the first visit . . . remained the same" and "no repairs ha[d] been performed to the buildings."[8] R.R. at 190. Flexible Flyer did not apply for a second make safe permit until the spring of 2022 and did not receive authorization to begin work until December 2022. *Id.* at 236, 241.

Accordingly, the trial court imposed a $144,820 fine consistent with the Code and the evidence before it. This Court's case law condones the imposition of cumulative fines when a property owner fails to correct ongoing Code violations. *See DY Props.*, 223 A.3d at 723-25 (affirming the imposition of a $243,200 fine for potentially hazardous conditions that remained uncorrected for eight months); *City of Phila. v. Joyce* (Pa. Cmwlth., No. 896 C.D. 2019, filed Dec. 4, 2020), slip op. at 9-10 (collecting cases involving cumulative fines). Here, the trial court considered aggravating and mitigating factors, and it imposed a fine of only one tenth what the City requested, despite years of noncompliance by Flexible Flyer. We can discern no abuse of discretion by the trial court, particularly when it showed Flexible Flyer significant leniency.

As part of its second issue, Flexible Flyer points to language in the City's final notice of Code violations, indicating fines would begin to accrue "as of the date of this notice" on March 8, 2022. R.R. at 33-35. Flexible Flyer argues the City is bound by its representation in the final notice that fines would not begin to accrue until March 8, 2022, rather than September 29, 2019. Flexible Flyer's Br. at 54-57. Flexible Flyer also contends the City should be estopped from claiming noncompliance with the Code or seeking a fine. *Id.* at 58-62. Flexible Flyer

---

[8] Flexible Flyer does not argue Abdelaal fulfilled the responsibilities of a "design professional in responsible charge," as required under the initial notice of Code violations. *See* R.R. at 30-31.

11

maintains the City failed to act in good faith by bringing an enforcement action while the parties were working together to correct the Code violations and identifying new concerns with the Property during the field inspection in April 2023. *Id.*

We see no basis to set aside the trial court's fine because of language in the City's final notice of Code violations indicating fines would begin to accrue as of March 8, 2022. R.R. at 33-35. The final notice is contrary to both the initial notice and the Code, which provides for the accrual of fines after expiration of the compliance period when no timely appeal is filed. Code § A-601.5. Moreover, Flexible Flyer maintains it did not receive the final notice, which means it could not have been misled or confused by its language. Regarding Flexible Flyer's argument that the City should be estopped from claiming noncompliance with the Code or seeking a fine, estoppel applies in zoning matters to "preclud[e] municipal enforcement of a land use regulation," where a landowner relies to his or her detriment on the innocent belief that a land use is permitted, and enforcement of the land use regulation would result in hardship. *Vaughn v. Zoning Hearing Bd. of Twp. of Shaler*, 947 A.2d 218, 224-25 (Pa. Cmwlth. 2008) (quoting *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002)). This case does not involve a land use regulation or Flexible Flyer's innocent belief that it could use the Property in a certain way. Rather, the case results from Flexible Flyer's prolonged failure to remedy unsafe conditions on the Property.

## CONCLUSION

We conclude the trial court did not commit an abuse of discretion by imposing a $144,820 fine against Flexible Flyer. The Property was in violation of the Code, and Flexible Flyer failed for years to make the necessary repairs. Despite Flexible

12

Flyer's recalcitrance, the trial court imposed a fine of only one tenth of what the City requested. Thus, we affirm the trial court's order dated June 2, 2023.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                    :
         v.                :  No.  730 C.D. 2023
                                      :
Flexible Flyer Studios, L.P.,   :
                  Appellant :

## **O R D E R**

**AND NOW**, this 16th day of July 2024, the order of the Court of Common Pleas of Philadelphia County, dated June 2, 2023, is **AFFIRMED**.

_____
STACY WALLACE, Judge