# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William G. Tomko, Jr.,                          :
General Partner, trading as              :
Missionary Partners, LTD.,               :
                  Appellant        :
                                 :
          v.                         :
                                 :
Baldwin Borough and                      :
Zoning Hearing Board of                  :    No. 1477 C.D. 2023
Baldwin Borough                          :    Argued:  October 8, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge[1]
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  April 23, 2025

        William G. Tomko , Jr. (Tomko), general partner, trading as Missionary Partners, Ltd. (Missionary Partners) appeals from the Allegheny County Common Pleas Court's (trial court) November 21, 2023 order affirming the Baldwin Borough (Borough) Zoning Hearing Board's (ZHB) decision that denied Tomko's appeal and affirmed the Borough Zoning Officer's (Zoning Officer) determination that Tomko's use of the property located at 0 Louisa Street, Pittsburgh, Pennsylvania (Property) violated the Borough's Zoning Ordinance.[2]  Tomko presents one issue for

---

[1] This matter was reassigned to the author on January 7, 2025.
[2] Borough of Baldwin, Pa. Zoning Ordinance (1973), *as amended*.

this Court's review: whether the trial court erred by affirming the ZHB's decision.[3] After review, this Court affirms.

Missionary Partners and Tomko Construction, Ltd. (Tomko Construction) (collectively, Tomko)[4] own the Property which consists of 82.4 acres and is located in both the R-2 (Medium and High Density Residential) and the I-1 (Light Industrial) Zoning Districts. Sometime during November 2022, the Zoning Officer received complaints regarding noise emanating from the Property. As a result, the Zoning Officer conducted an off-site investigation into activities taking place on the Property. In the course of his investigation, the Zoning Officer observed that the Property was being used primarily for the storage and dumping of construction materials and debris. On December 1, 2022, the Zoning Officer issued a Notice of Violation to Tomko.

Tomko filed a timely appeal from the Zoning Officer's Notice of Violation. The ZHB conducted a hearing on March 22, 2023. On June 3, 2023, the ZHB concluded that the Zoning Officer correctly determined that Tomko's principal use of the Property as a storage/dump site for construction materials Tomko Construction used in its construction business violated the Borough's Zoning Ordinance and, therefore, he did not err by issuing the Notice of Violation. The ZHB

---

[3] In the Argument section of his brief, Tomko raises various distinct arguments to support his assertion that the trial court erred by affirming the ZHB's decision. The ZHB argues that Tomko has waived all of his arguments by not expressly stating them in his "Statement of the Questions Involved," Tomko Br. at 4, as required by Pennsylvania Rule of Appellate Procedure (Rule) 2116(a). Rule 2116(a) states: "The statement will be deemed to include every subsidiary question fairly comprised therein." Pa.R.A.P. 2116(a). Because the arguments raised in the Argument section of Tomko's brief are subsidiary questions fairly comprised in the issue presented, and they are the same arguments Tomko presented before the ZHB and the trial court, this Court declines to find waiver and will address Tomko's arguments raised in the Argument section of his brief.

[4] Tomko, Missionary Partners, and Tomko Construction are used interchangeably throughout the record; thus, for ease of reference, unless Missionary Partners or Tomko Construction is referenced specifically, this Court will refer to all three collectively as Tomko.

denied Tomko's appeal and affirmed the Zoning Officer's determination that Tomko's use of the Property violated the Borough's Zoning Ordinance. Tomko appealed to the trial court. On November 21, 2023, the trial court affirmed the ZHB's decision. Tomko appealed to this Court.[5]

Tomko first argues that the record establishes that Missionary Partners has continuously used the Property for decades as a fill and grading site, pending future development. Tomko asserts that this use was memorialized in a 2008 agreement between the Borough and Missionary Partners (2008 Agreement) that contemplates ongoing grading and filling activities at the Property. Tomko emphasizes that the 2008 Agreement specifically provides: "Missionary Partners shall be permitted to continue the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property." Reproduced Record (R.R.) at 117.[6] Tomko contends that despite this clear language, the Borough enforced its Zoning Ordinance against Missionary Partners to limit its ability to dump fill material on the Property, which Missionary Partners obtained from both Tomko's construction projects and from private clients, such as Pennsylvania (PA)

---

[5] "When [the trial court] takes no additional evidence, [this Court] must limit [its] review to whether the ZHB 'committed an abuse of discretion or an error of law.'" *Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (quoting *Harrisburg Gardens, Inc. v. Susquehanna Twp. Zoning Hearing Bd.*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009)). "[This Court] appl[ies] this deferential standard of review because [it] do[es] not sit as 'a super [zoning hearing board]' and thus '[t]he necessity must be clear before there is justification for judicial interference with the municipality's exercise of its zoning power.'" *Id.* (quoting *Robert Louis Corp. v. Bd. of Adjustment of Radnor Twp.*, 274 A.2d 551, 555 (Pa. Cmwlth. 1971)).

[6] The Reproduced Record does not comply with Rule 2173 requiring the reproduced record to be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The Reproduced Record here only utilizes Arabic figures. For convenience, this Court cites to the Reproduced Record as paginated by Tomko.

American Water. Tomko proclaims that this violates the Contract Clauses of the United States and Pennsylvania Constitutions.[7]

The ZHB rejoins that nothing in the 2008 Agreement establishes that the Borough had agreed to allow the Property's principal commercial use as dumping and storing of construction debris. The Borough retorts that the 2008 Agreement only stated that Missionary Partners could continue grading and filling the Property to permit the development of the Property. The Borough asserts that the 2008 Agreement did not grant Missionary Partners carte blanche to store, dump, and dispose of construction materials indefinitely for its own commercial benefit. Further, the Borough maintains that the 2008 Agreement explicitly stated that the development of the Property shall be consistent with all of the Borough's Codes and Ordinances.

Initially, the 2008 Agreement provided, in relevant part:

WHEREAS, Missionary Partners is the owner/developer of, a certain tract of land located in [the Borough] adjacent to Streets Run Road . . . ; and,

WHEREAS, **Missionary Partners has been engaged in re-grading of said [P]roperty since 2003 through the placement of fill as authorized by a Department of Environmental Protection [National Pollutant Discharge Elimination System (] NPDES [)] permit through November 2008 with said grading** and as subsequently reauthorized, **resulting in the leveling of the grade over a portion of said [P]roperty**; and,

WHEREAS, the Borough has a sanitary sewer line that traverses the [P]roperty with a number of manholes for access to the same and, that the sanitary sewer line has

---

[7] The Contract Clause of the United States Constitution provides, in relevant part, that "[n]o [s]tate shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts." U.S. CONST. art. I, § 10, cl. 1. The Contract Clause of the Pennsylvania Constitution similarly provides that "[n]o . . . law impairing the obligation of contracts . . . shall be passed." PA. CONST. art. I, § 17.

4

been in existence for over fifty (50) years without an [e]asement; neither recorded nor unrecorded; and,

WHEREAS, over time, Missionary Partners has, through its filling and grading of the [P]roperty, caused said sanitary sewer line to become buried to a depth of approximately [35] feet, which necessitated, Tomko/Missionary Partners to extend the shafts of the manholes approximately thirty (30') feet to accommodate the increased depth of the sewer line due to the filling and grading; and,

WHEREAS, **Missionary Partners wishes to continue to fill and re-grade the remaining portion of said [P]roperty and**, **then develop the site pursuant to the Ordinances and Codes of the Borough**; and,

WHEREAS, **the parties wish to provide for Missionary Partners to complete filling and grading of the [P]roperty**, **for maintenance of the existing sanitary sewer line**, and provide the Borough with a dedicated right-of-way easement for a sewer line prior to sale of the [P]roperty at a location on the [P]roperty agreeable to the parties.

NOW THEREFORE, and with the intention of being bound[] hereby, it is, mutually agreed by, and between the parties hereto as follows:

1. **All prior statements of fact and agreements contained within the above[-]cited clauses are incorporated fully herein**.

2. **Missionary Partners shall be permitted to continue the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property**, **under the requirements of the [Borough's] Grading Ordinance**.

. . . .

7. The Borough agrees that upon receipt of proper applications, plans[,] and bonds, meeting the requirements of Borough Ordinances and Codes, that it will issue, in a timely fashion, all necessary permits to allow Missionary Partners to proceed[] under this Agreement.

5

8. That both parties agree that upon the execution of this Agreement, [] **all claims** that either party may have against the other **regarding any prior Ordinance or Code** violations, or any cause of action regarding the Property **is waived** by each party and this Agreement shall act as a complete and final [r]elease concerning such claims.

R.R. at 116-119 (emphasis added).

"In interpreting a contract, [this Court] must give effect to all its provisions, and [this Court] 'will not interpret one provision of a contract in a manner which results in another portion being annulled.'" *MBC Dev., LP v. Miller*, 316 A.3d 51, 64 (Pa. 2024) (quoting *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015)). Here, a review of the relevant portions of the 2008 Agreement make clear that, contrary to Tomko's assertion, the provision: "Missionary Partners shall be permitted to continue the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property[,]" R.R. at 117, does not authorize Missionary Partners to use the Property for commercial dumping and storing of construction debris. In addition, because the 2008 Agreement does not authorize Missionary Partners the unfettered ability to dump material on the Property, the 2008 Agreement is not impaired, and there can be no violation of the Contract Clauses of the United States and Pennsylvania Constitutions.

Further, Tomko testified:

**Q**. And you said you are currently storing on the [P]roperty[;] I think you said slag. What's the --

**A**. **Not slag. I'm sorry**, [a]**ggregate**, **2**-**A aggregate**.

**Q**. Do you --

**A**. **We park dump trucks there**.

**Q**. Do you -- Hold on one second. Let me finish the question. So 2-A aggregate. And what is a ditch cage?

**A**. **A ditch cage is** -- **you know when you put sewer pipe in**? **It's to protect your men from the ditch caving in**.

**Q**. Okay. And sewer pipe, you said, also?

6

**A**. **Occasionally**, **yes**.

**Q**. And these materials that [sic] are being stored in connection with your primary business?

**A**. **That's correct**.

**Q**. And where does that operate out of?

**A**. **That operates out of Finleyville**.

**Q**. Okay, so is the process that they -- your truckers or workers leave Finleyville, will come by the [Property] and pick up materials and then use it for projects?

**A**. **Not necessarily**. **Sometimes**[,] **yes**.

**Q**. What are the other situations?

**A**. **The other times**, **we park dump trucks down there**.

**Q**. I mean with the use of the materials you have on the site.

**A**. **That's correct**. **They are all from down there**.

**Q**. And do what with it?

**A**. **And take it to the City of Pittsburgh and do the different projects we do**.

R.R. at 229.

Tomko further described:

**Q**. [O]kay. . . . You had said, in addition to storing those materials on the [Property] in connection with your business, that it was very profitable to take materials from third parties; is that right?

**A**. **That's correct**. **It's possible for not only for** (sic) **third parties**, **but also for Tomko**. **It fills the dump site from street openings we do**.

**Q**. And what sorts of materials does Tomko accept from these third parties?

**A**. **Dirt**, **concrete**, **asphalt**.

**Q**. And what would you do with the concrete and asphalt you would receive from a third party?

**A**. **It would be buried in with the fill**.

**Q**. And who are some of your examples of your third-party customers? I know [PA] American Water was discussed.

7

**A**. **They** (sic) **were** -- **they** (sic) **were our main customer**.

**Q**. Okay. Are there any others?

**A**. **PJ Dick dumped down there**. **There's probably a dozen contractors that dump down there**.

**Q**. And the materials that are being brought to th[e Property], you said it's asphalt, dirt. I'm sorry, what else did you say?

**A**. **Dirt**, **aggregate**.

**Q**. Aggregate. Do you know what those materials had been used for prior to being brought to your site? Were they part of construction projects?

**A**. **Roads**.

**Q**. Okay. So these are -- these are -- the third-party customers -- I'm sorry, I may not be using the right term -- clients, whatever you want to say, they do the work on the roads, whatever the leftovers are, one of the services you offer is to provide them with places to get rid of them.

**A**. **That's correct**.

R.R. at 229-230.

> Based thereon, the ZHB found:

> Tomko's frank admissions regarding his company's use of the Property established a persuasive factual basis to support the Zoning Officer's determination that a violation had occurred when construction debris was stored at the Property to be sold to third[-]party vendors and/or used in connection with [] Tomko's construction business.

R.R. at 286. The ZHB concluded:

> [T]he credible evidence presented at the hearing establishes that the Property was at all times relevant being used principally for commercial purposes, not residential, specifically the dumping/storing of construction materials to be used by Tomko's construction business for jobs not related to the development of the Property.

R.R. at 284. Because the ZHB's conclusion was based on the credited record evidence, this Court discerns no error in the ZHB's determination. Accordingly, because the 2008 Agreement did not establish that the Borough had agreed to allow

the Property's principal commercial use as dumping and storing of construction debris, the ZHB did not err by denying Tomko's appeal and affirming the Zoning Officer's determination that Tomko's use of the Property violated the Borough's Zoning Ordinance.[8]

Tomko next argues that the Borough should be estopped from enforcing the Zoning Ordinance against Missionary Partners. Specifically, Tomko contends that Missionary Partners has been filling and grading the Property without a zoning citation for 30 years; the Borough, to settle a legal dispute concerning the sewer line, reduced Missionary Partners' right to continue filling and grading to contract; and under contract law principles, Missionary Partners is secure in its right to perform this work without penalty in the form of, *inter alia*, Zoning Ordinance violations.

---

[8] The Dissent maintains that because the Notice of Violation charged Missionary Partners with violating the Ordinance both by dumping construction materials and debris for purposes of filling the Property and for storing those materials on the Property for use in construction, the Notice of Violation unequivocally includes filling activities on the Property. Thus, the Dissent asserts that the ZHB's decision to deny Missionary Partners' appeal enables the Borough to prohibit Missionary Partners from receiving and placing fill materials on the Property. Specifically, the Dissent asserts that because Tomko testified that the construction *debris* that was being dumped on the Property for purposes of filling and grading the Property was dirt, concrete, asphalt, and aggregate from the excavation of underground utilities, the ZHB's decision prohibits Missionary Partners from receiving and placing fill materials on the Property for the purpose of developing the Property. However, the Notice of Violation did not charge Missionary Partners with violating the Ordinance by **receiving and placing fill materials on the Property**. The Notice of Violation expressly referenced **dumping construction materials and debris** and **storing those materials** on the Property. There is clearly a difference between dumping and storing construction materials for commercial purposes and receiving and placing fill materials for the purpose of developing the Property. The agreed contract provision, which provides: "Missionary Partners shall be permitted to continue **the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property**," R.R. at 117 (emphasis added), is not the same as Missionary Partners' "principal **use of the Property as a storage/ dump site for construction materials used by** [**Tomko's**] **construction business**[,]" R.R. at 289 (emphasis added), as the Zoning Officer and the ZHB concluded. Accordingly, the ZHB's decision does not prohibit Missionary Partners from receiving and placing fill materials on the Property for the purpose of developing the Property.

9

This Court has explained:

> Equitable estoppel is an unusual remedy granted only in extraordinary circumstances. [*Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010)]. To establish equitable estoppel, a landowner must prove that "the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation." *Id*. Additionally, the landowner must establish the following elements of good faith action on his part: "'[(]1) that he relie[d] to his detriment, such as making substantial expenditures[;] [(]2) based upon an innocent belief that the use is permitted[;] and [(]3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost.'" *Id*. (quoting *Vaughn v. Zoning Hearing Bd. of Twp. of Shaler*, 947 A.2d 218, 224-[]25 (Pa. Cmwlth. 2008)) (internal brackets omitted). A landowner must prove these essential factors by clear, precise, and unequivocal evidence.

*Victory Gardens, Inc. v. Warrington Twp. Zoning Hearing Bd.*, 224 A.3d 1110, 1115 (Pa. Cmwlth. 2020).

Here, Tomko merely claims that because he relied on the 2008 Agreement and he has not received a Notice of Violation since the parties executed the 2008 Agreement, he should be permitted to perform this work without penalty. However, as discussed above, the 2008 Agreement did not permit him to use the Property for commercial dumping and storing construction debris. Further, Tomko did not present clear, precise, and unequivocal evidence that he made substantial expenditures in reliance on the 2008 Agreement and that the Zoning Ordinance's enforcement would cause him hardship. Accordingly, Tomko has not established equitable estoppel.

Further, Tomko contends that the ZHB erred by admitting evidence of the Property's commercial use. Specifically, Tomko asserts that because whether

10

the fill materials were *sold to* Missionary Partners or *procured by* Missionary Partners is irrelevant under the Zoning Ordinance, and evidence regarding the same should not have been admitted at the ZHB hearing. However, because the 2008 Agreement expressly stated that the parties entered into the 2008 Agreement based on Missionary Partners' intent to "develop the [Property] pursuant to the Ordinances and Codes of the Borough[,]" whether Missionary Partners was violating the Zoning Ordinance by conducting a commercial enterprise of any sort was certainly relevant.

Notwithstanding, the ZHB concluded that "the Property was at all times relevant being used principally for commercial purposes, not residential, **specifically the dumping/storing of construction materials to be used by Tomko's construction business for jobs not related to the development of the Property**." R.R. at 284 (emphasis added). Thus, the ZHB did not base its decision on the evidence regarding Missionary Partners' procurement of fill materials. Accordingly, assuming, *arguendo*, that the ZHB did err by admitting said evidence, the error was harmless.

Tomko next asserts that the 2008 Agreement waives and releases any causes of action regarding the Property, and, thus, the ZHB committed reversible error by disregarding the 2008 Agreement's waiver clause when it upheld the Zoning Ordinance violation. However, as stated above, the 2008 Agreement provided, in relevant part:

> WHEREAS, Missionary Partners has been engaged in re-grading of said [P]roperty **since 2003** through the placement of fill as authorized by a Department of Environmental Protection NPDES permit through November 2008 with said grading and as subsequently reauthorized, resulting in the leveling of the grade over a portion of said [P]roperty; . . .
>
> . . . .

11

8. That both parties agree that upon the execution of this Agreement, [] **all claims** that either party may have against the other **regarding any prior Ordinance or Code** violations, or any cause of action regarding the Property **is waived** by each party and this Agreement shall act as a complete and final [r]elease concerning such claims.

R.R. at 116-119 (emphasis added). A plain reading of the 2008 Agreement reflects that the parties waived any Zoning Ordinance violation between 2003 and August 26, 2008, the date the parties executed the 2008 Agreement. *See* R.R. at 116. Accordingly, the ZHB properly considered the waiver clause.

Lastly, Tomko argues that the doctrines of res judicata and collateral estoppel bar the ZHB from addressing this matter after it was presented to and addressed by the Allegheny County Common Pleas Court (Common Pleas).[9] Specifically, Tomko contends, that by January 21, 2020 order (Dkt. No. GD-19-014398), Common Pleas vacated a prior temporary injunction and confirmed that Missionary Partners was free to continue to place fill on the Property within the bounds established by its NPDES permit.[10] *See* R.R. at 65. Thus, Tomko declares that the ZHB lacked jurisdiction to enforce the Zoning Ordinance violations that were subject to pending litigation, rendering the ZHB an improper venue to address Tomko's alleged Zoning Ordinance violations.

A review of the record reveals that, in October 2019, the Borough filed a Complaint in Equity in Common Pleas, seeking an injunction to prevent Missionary Partners from filling and grading the Property without a valid grading permit (Dkt. No. GD-19-014398). *See* R.R. at 66-74. Tomko responded by filing a Complaint in Mandamus in Common Pleas, alleging that Missionary Partners

---

[9] This Court references the Allegheny County Common Pleas Court as Common Pleas at this juncture to differentiate it from the trial court that ruled on Tomko's appeal from the ZHB's decision.

[10] This Court notes the vacated order prohibited Missionary Partners from further dumping on the Property until it provided evidence of insurance coverage for landslides. *See* R.R. at 63.

12

submitted a new grading permit application to the Borough on April 23, 2019, and was seeking to have Common Pleas compel the Borough to issue Missionary Partners a grading permit under the contract (Dkt. No. GD-19-014579). *See* R.R. at 103-114. In September 2022, Tomko filed a second Complaint against the Borough, alleging that the Borough breached the 2008 Agreement and requesting monetary damages for Missionary Partners' loss of revenue, compensatory damages, and punitive damages (Dkt. No. GD-22-009353). *See* R.R. at 170-181.

The ZHB rejoins that the Common Pleas' cases involve issues, claims, and theories of liability (e.g., injunctive relief, mandamus, breach of contract) with differing burdens of proof that are separate and distinct from the issue of whether Tomko's use of the Property constituted an unpermitted principal commercial use under the Zoning Ordinance. The Borough retorts that while Tomko and the Borough have been involved in prior litigation regarding Tomko's lack of compliance with the Borough's grading/fill regulations, none of the cases are related to zoning and, importantly, none resulted in a final judgment on the merits that could reasonably be said to preclude the Borough from enforcement of its Zoning Ordinance in the instant case.

> The judicial doctrine of *res judicata* "bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action." *Appeal of Coatesville Area Sch. Dist.*, . . . 244 A.3d 373, 378 ([Pa.] 2021). For the bar of *res judicata* to apply, both actions must have "**an identity of issues**, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *Id*. at 379 (citations and internal quotation marks omitted). . . .
>
> Collateral estoppel bars re-litigation of an issue decided in a prior action. [*Id*.] at 379. Collateral estoppel may be applied only **if both cases involve the same issue**, the prior action was litigated to a final judgment on the merits, the party to be estopped was a party or was in privity with

13

> a party to the prior action and had a full and fair opportunity to litigate the issue in the prior action, and "resolution of the issue in the prior proceeding was essential to the judgment." *Id*.

*Clark v. Keystone Lawn Spray*, 302 A.3d 820, 824-25 (Pa. Cmwlth. 2023) (emphasis added) (quoting *Pocono Mountain Sch. Dist. v. Kojeszewski (Workers' Comp. Appeal Bd.)*, 280 A.3d 12, 17-18 (Pa. Cmwlth. 2022)).

Here, because none of the Common Pleas' cases involve the issue of whether Tomko violated the Zoning Ordinance by engaging in a non-permitted commercial use of the Property, neither res judicata nor collateral estoppel apply. Moreover, Section 909.1(a) of the Pennsylvania Municipalities Planning Code[11] grants the ZHB "exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the [Z]oning [O]fficer[.]" 53 P.S. § 10909.1(a). Accordingly, the ZHB had jurisdiction to decide the Zoning Ordinance violation.

For all of the above reasons, the trial court's order affirming the ZHB's decision is affirmed.

_____
ANNE E. COVEY, Judge

---

[11] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William G. Tomko, Jr.,                    :
General Partner, trading as               :
Missionary Partners, LTD.,                :
                        Appellant          :
                                          :
            v.                            :
                                          :
Baldwin Borough and                       :
Zoning Hearing Board of                   :    No. 1477 C.D. 2023
Baldwin Borough                           :

## O R D E R

AND NOW, this 23rd day of April, 2025, the Allegheny County Common Pleas Court's November 21, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William G. Tomko, Jr.,                    :
General Partner, trading as               :
Missionary Partners, LTD.,                :
                          Appellant       :
                                          :
            v.                            :
                                          :
Baldwin Borough and                       :
Zoning Hearing Board of                   : No. 1477 C.D. 2023
Baldwin Borough                           : Argued:  October 8, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE WALLACE                                    FILED:  April 23, 2025


        As the Majority properly notes, Missionary Partners, Ltd. (Missionary
Partners), entered into a written agreement with the Baldwin Borough in 2008 (the
Contract).  *See Tomko v. Baldwin Borough* (Pa. Cmwlth., No. 1477 C.D. 2023, filed
April 23, 2025), slip op. at 4-6 (Majority Opinion).  The parties acknowledged in the
Contract that Missionary Partners was previously filling and grading the Property in
violation of the Borough's Zoning Ordinance (Ordinance).[1]  Reproduced Record
(R.R.) at 116-17.  At the same time, the Borough, without any legal right to do so,
maintained a sanitary sewer line on the Property for over 50 years.  *Id.* at 116.  Thus,
the Property presented legal issues for both the Borough and Missionary Partners.

---

[1]  Borough of Baldwin, Pa., Zoning Ordinance (1973), *as amended*.

To resolve their competing legal issues, the parties reached a compromise in the Contract, whereby the Borough agreed to permit Missionary Partners to continue to fill and grade the Property[2] and Missionary Partners agreed to provide the Borough with access to its sewer line, help maintain the sewer line, share costs associated with maintaining the existing sewer line and with constructing a new sewer line, and ultimately provide the Borough with an easement on the Property. *Id.* at 117-19. On December 1, 2022, despite the Borough's contractual obligation to allow Missionary Partners' fill activities, and despite the Borough receiving its benefit from the Contract, i.e., continued use of its illegally placed sewer line, the Borough issued an Enforcement Notice (Enforcement Notice) against Missionary Partners, citing "multiple contracts to accept 'fill' at the Property." R.R. at 13.

This Court plays an important role in keeping the government honest. We act as a check against unrestrained government power and ensure unethical government actions do not go unaddressed. Presently, there is an unprecedented erosion of trust in all levels of government. The public expectation is far too often that the government will act with dishonesty rather than integrity. I fear the Majority's decision affirms another example of bad actions by the government which the public has grown to expect yet detest. Respectfully, if the public cannot expect the government to honor its contracts, and cannot expect this Court to enforce them,

---

[2] Most relevantly, the Borough acknowledged in the Contract that "Missionary Partners wishes to continue to fill and re-grade the remaining portion of [the P]roperty and, then develop the site pursuant to the Ordinances and Codes of the Borough." R.R. at 117. The parties also expressed their desire "to provide for Missionary Partners to complete filling and grading of the [P]roperty, for maintenance of the existing sanitary sewer line, and provide the Borough with a dedicated right-of-way easement for a sewer line prior to sale of the [P]roperty." *Id.* Thereafter, the Contract provided that the parties mutually agreed "Missionary Partners shall be permitted to continue the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property, under the requirements of the Borough of Baldwin Grading Ordinance." *Id.*

then it has every reason for distrust. Because I would require the Borough to uphold its end of the deal and permit Missionary Partners to continue placing fill on the Property, I respectfully concur in part and dissent in part.

First, I note the Zoning Hearing Board of Baldwin Borough's (ZHB) decision did, contrary to the ZHB's conclusions of law, affect Missionary Partners' ability to fill and grade the Property. The ZHB's relevant conclusions of law are:

> 19. The Board concludes that the credible evidence presented at the hearing establishes that the Property was at all times relevant being used principally for commercial purposes, not residential, specifically the dumping/ storing of construction materials to be used by Tomko's construction business for jobs not related to the development of the Property.
>
> . . . .
>
> 43. The Zoning Officer testified that issues of "grading and fill" were not before him when he determined that a zoning violation had occurred and the Board concludes that . . . the testimony and arguments of [Missionary Partners] concerning grading and fill activities at the Property . . . are irrelevant to the Zoning Officer's determination and the Enforcement Proceeding.

R.R. at 287-89. Despite these conclusions of law, the factual allegations in the Enforcement Notice were as follows:

> The Borough has observed that the Property is being used for the storage and/or dumping of construction materials and debris. This is further evidence by the verified Complaint in Civil Action filed against the [Borough] by [Tomko] . . . in which [Tomko] admits that Missionary Partners has multiple contracts **to accept "fill" at the Property** from off-site locations with said contracts being valued in excess of $275,000 per year since 2019.

*Id.* at 13 (emphasis added). The Enforcement Notice then stated Missionary Partners was operating the Property "for commercial purposes as a dump site." *Id.* Thus, the Enforcement Notice charged Missionary Partners with violating the Ordinance

by both dumping construction materials and debris[3] for purposes of filling the Property and for storing those materials on the Property for use in construction.

Because the Enforcement Notice unequivocally includes filling activities on the Property, the ZHB's decision to deny Missionary Partners' appeal, thereby affirming the Enforcement Notice, enables the Borough to prohibit Missionary Partners from receiving and placing fill materials on the Property. Therefore, I believe the ZHB committed an error of law when it concluded that its decision was limited to whether Tomko principally used the Property as a storage/dump site for materials for his construction business. Further, I believe, pursuant to the Enforcement Notice, this Court should evaluate Missionary Partners' filling and grading activities.

Second, I disagree with the Majority's limitation of Missionary Partners' estoppel argument to a claim of equitable estoppel. *See Tomko*, slip op. at 9-10. Missionary Partners generally argues the Borough should be "estopped" from enforcing the Ordinance, without ever referencing equitable estoppel. *See* Appellant's Br. at 15, 16. Missionary Partners also argues the Borough "waived" enforcement of the Ordinance through the Contract. *Id.* at 17.

---

[3] Tomko testified that the construction *debris* that was being dumped on the Property for purposes of filling and grading the Property was dirt, concrete, asphalt, and aggregate from the excavation of underground utilities. R.R. at 230. He further testified these materials were "buried in with the fill." *Id.* The Borough's Zoning Officer also admitted that the construction *debris* he observed being dumped on the Property was "concrete block and masonry and stuff that have been retrieved from other -- you know, from construction sites where it looks like the stuff, basically, that PA American Water would dig up on the repair of a street." *Id.* at 221. In contrast, Tomko testified Missionary Partners only stored construction *materials* (stone, ditch cages, pipe), which it used in off-site construction projects, on the Property. *Id.* at 229. Consequently, Missionary Partners was using traditional fill materials to fill the Property and was not storing construction *debris* on the Property.

There are "three labels assigned in Pennsylvania land use/zoning law [for] the equitable remedy precluding municipal enforcement of a land use regulation." *Vaughn v. Zoning Hearing Bd. of Shaler*, 947 A.2d 218, 224-25 (Pa. Cmwlth. 2008). Those labels include

> (1) a "vested right" where the municipality has taken some affirmative action such as the issuance of a permit; (2) a "variance by estoppel" where there has been municipal inaction amounting to active acquiescence in an illegal use; or (3) "equitable estoppel" where the municipality intentionally or negligently misrepresents its position with reason to know that the landowner would rely upon that misrepresentation. Estoppel under these theories is an unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief.

*Id.* at 225 (citation omitted). Regarding the defense of waiver, the Pennsylvania Supreme Court has explained:

> A waiver in law is the act of intentionally relinquishing or abandoning some known right, claim or privilege. To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it. Waiver is essentially a matter of intention. It may be expressed or implied.

*Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962).

The Contract expressly permits Missionary Partners "to continue the placement of fill and grade the Property until same is filled and graded so as to permit the development of the Property, under the requirements of the [Borough's] Grading Ordinance."[4]  R.R. at 114.  The Borough leveraged its ability to enforce the

---

[4] I would interpret the "under the requirements of the Borough's Grading Ordinance" to relate back to only "permit[ting] the development of the Property."  R.R. at 117.  In other words, I interpret this provision to mean Missionary Partners could place fill and grade the Property uninhibited until the Property was able to be developed in a way that complied with the Borough's Grading Ordinance.  This interpretation is consistent with the parties' stated intentions in the
**(Footnote continued on next page…)**

Ordinance to obtain Missionary Partners' concessions in the Contract. The Contract, therefore, reveals the Borough had knowledge of its rights and clearly intended to surrender them in exchange for the benefits it received. As a result, I would conclude the Borough waived enforcement of the Ordinance against Missionary Partners with respect to filling and grading the Property.[5]

Overall, I would conclude the ZHB erred in failing to analyze the actual allegations set forth in the Enforcement Notice and in failing to recognize the Borough's waiver of enforcement of the Ordinance regarding Missionary Partners' filling and grading on the Property. Consequently, I would reverse the trial court's order, thereby granting Missionary Partners' appeal of the Enforcement Notice, to the extent the trial court affirmed the Zoning Officer's determination Missionary Partners' dumping of debris for the purpose of filling and grading the Property violated the Ordinance.

Missionary Partners' storage of materials for Tomko's construction business is, however, an entirely different matter. The Contract does not contemplate or permit storage of construction materials, beyond filling and grading, on the Property. As a result, the Borough has not waived enforcement of the Ordinance regarding these activities. Missionary Partners has not argued its storage of construction

---

Contract, which provide "Missionary Partners wishes to continue to fill and re-grade the remaining portion of said [P]roperty and, **then develop the site pursuant to the Ordinances and Codes of the Borough**." *Id.* (emphasis added).

[5] The Contract is silent regarding the methodology Missionary Partners could use to acquire fill materials for the Property. Missionary Partners had three theoretical choices: purchase fill materials, accept fill materials from others free of charge, or charge others a fee to dump fill materials on the Property. I believe Missionary Partners' choice to do the latter was simply a business decision, which the Contract does not prevent. Thus, I believe the Borough's waiver of enforcement of the Ordinance, as outlined above, encompassed any "commercial use" resulting from charging others a fee to dump fill materials on the Property.

materials for off-site use is a permitted use under the Ordinance. Therefore, I would affirm the trial court's order affirming the ZHB's determination Missionary Partners' storage of construction materials on the Property, for uses other than filling and grading the Property, violates the Ordinance.

_____
STACY WALLACE, Judge